In re Cuyler WENBERG, and Neta Wenberg, Debtors.

FEDERAL DEPOSIT INSURANCE CORPORATION, acting as Receiver of Valencia Bank, Appellee,

v.

Cuyler WENBERG, and Neta Wenberg, Appellants.

BAP Nos. CC–87–2255–MoVMe, CC–88–1047.

Bankruptcy No. SAX 87–00668 JR.

Ref. No. M7–0824 JR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 20, 1988.

Decided Dec. 13, 1988.

William M. Burd, Santa Ana, Cal., for appellants.

Debra K. Meyers, Daniel D. Zahner, Newport Beach, Cal., for appellee.

**632**

Before MOOREMAN, VOLINN and MEYERS, Bankruptcy Judges.

## OPINION

MOOREMAN, Bankruptcy Judge:

In appeal No. CC 88–1047, appellants (debtors) argue that an award of "attorney's fees and costs" arising out of an adversary action in a Texas bankruptcy case should not be considered a "liquidated debt" pursuant to 11 U.S.C. § 109(e). Accordingly, the debtors seek reversal of the bankruptcy court's determination that their list of "liquidated," unsecured debts exceeded the $100,000 statutory limit of § 109(e).

In the companion case arising from the same bankruptcy proceedings (No. CC 87–2255), the debtors appeal the bankruptcy court's order dismissing their bankruptcy for lack of jurisdiction on the basis that the debtors did not satisfy the eligibility requirements of § 109(e).

## FACTS

On February 4, 1987, appellants filed a Chapter 13 petition in the Central District of California. At the time the debtors' petition was filed, Mr. Wenberg was the defendant in an adversary proceeding originating in the U.S. Bankruptcy Court for the Southern District of Texas. In the Texas bankruptcy case, the F.D.I.C. (appellee herein), had filed an adversary action against Mr. Wenberg seeking turnover of certain property and for an accounting of fees. On January 16, 1987, (prior to the Wenbergs' petition), a declaratory judgment was entered against Mr. Wenberg in the Texas adversary action, finding him liable to the F.D.I.C. for damages including all attorney's fees and costs. A hearing to

determine the amount of damages was set for February 5, 1987.

At the February 5, 1987 hearing in the Texas adversary action, counsel for the F.D.I.C. advised the Texas bankruptcy court that Mr. Wenberg had filed a bankruptcy petition in California the day before. The Texas bankruptcy court determined, however, that it would proceed with the hearing because no written notice of the bankruptcy filing had been received. Subsequent to the hearing, the Texas bankruptcy court entered a final judgment against Mr. Wenberg for "$1,282,700.00 plus costs and attorneys [sic] fees." [1]

Meanwhile, in the Wenbergs' California bankruptcy case, the Wenbergs' Chapter 13 statement of affairs listed general unsecured claims in the aggregate sum of $47,368.00 and listed the claim of the F.D.I.C. as contingent and unliquidated. On April 2, 1987, the F.D.I.C. objected to confirmation of the Wenbergs' plan contending that the Wenbergs' non-contingent, liquidated unsecured debts exceeded the statutory limitation set forth in 11 U.S.C. § 109(e). Subsequently, the F.D.I.C. also filed a "Motion for Relief From Stay; Dismissal or Conversion," seeking to proceed with the Texas Bankruptcy Court litigation.

On July 30, 1987, the California Bankruptcy Court, entered an opinion and order finding that the F.D.I.C.'s claim was unliquidated when the Wenbergs had filed their Chapter 13 petition, because further judicial action was necessary to determine the amount of damages. However, the court determined that the award for "attorney's fees and costs" would be deemed liquidated because:

> [w]hen the declaratory judgment was entered on January 17, 1987, the amount of the attorneys' fees could easily have been ascertained by examining the billing statements.

Memorandum Opinion at pg. 5.

Based on the above determination, the bankruptcy court found that there was " 'no

---

**1.** It should be noted that the final judgment entered by the Texas bankruptcy court was in violation of the automatic stay arising out of the Wenberg's California bankruptcy case and was, therefore, void. *See In re Wingo*, 89 B.R. 54, 57 (9th Cir. BAP 1988). However, the record indicates that the bankruptcy court in this case, did not rely on the Texas bankruptcy court's postpetition action. Rather, the bankruptcy court in the instant case, made a separate determination on the amount of the attorneys' fees pursuant to the pre-petition declaratory judgment.

evidence' to support FDIC's position on attorney's fees" and accordingly ordered FDIC to submit "a declaration and appropriate supporting documentation to prove its attorneys' fees." Memorandum Opinion at 5–6. The bankruptcy court also gave the debtors an opportunity to "object in writing to the evidence."

At the November 6, 1987 hearing on the matter, the debtors objected to the FDIC's billing statements arguing that there was little distinction between the fees incurred in the Texas bankruptcy case on the whole and the fees incurred as a result of the adversary action against Mr. Wenberg. The bankruptcy court agreed with the debtors' argument that the declarations were insufficiently detailed. However, after taking "testimony" from one of the FDIC's attorneys, the court determined: 1—that the issue of reasonableness was inapplicable to a determination of § 109(e) eligibility; 2—that $34,989.00 in accounting fees would be deemed "liquidated" as having been spent only on the Wenberg adversary action; and 3—that at least $18,967.00 in attorneys' fees could be attributed to the Wenberg adversary action.

Accordingly, the bankruptcy court determined that the above figures along with $18,000 in income taxes from previous years would all be deemed "liquidated" debts for purposes of § 109(e) eligibility. After including the above amounts with the $47,368.00 listed on the debtors' schedules, the bankruptcy court ruled that the debtors were ineligible for Chapter 13 relief and pursuant thereto, denied confirmation of the plan. The order denying confirmation of the Wenbergs' plan was entered on December 2, 1987, from which a timely notice of appeal followed. (BAP NO. CC 88–1047).

On December 3, 1987, a hearing was held on the FDIC's motion for relief from stay, at which time the bankruptcy court entered a "sue sponte dismissal" of the case based on the court's previous finding of Chapter 13 ineligibility. In doing so, the court determined that "§ 109(e) is jurisdictional" and the debtors' failure to satisfy Chapter 13 requirements deprived the court of jurisdiction to enter a order of conversion. The order dismissing the case was entered on January 6, 1988, and the debtors' filed a timely notice of appeal. (BAP NO. CC 87–2255).

## DISCUSSION

### (BAP NO. CC 88–1047)

Whether a debt is "liquidated" pursuant to 11 U.S.C. § 109(e) is an issue involving interpretation of the Bankruptcy Code and is therefore a question of law subject to *de novo* review. *See e.g. In re Goralnick*, 81 B.R. 570, 571 (9th Cir. BAP 1987). However, the determination of the amount of any such "liquidated debt" is a question of fact and cannot be reversed unless clearly erroneous. *See* Bankruptcy Rule 8013.

■ The essential issue in this appeal is whether the $34,989.00 in accounting fees and the $18,967.50 in attorneys' fees constituted a "liquidated" debt at the time of the filing of the debtors' petition for purposes of § 109(e).[2] In previously addressing this issue, the Bankruptcy Appellate Panel recognized that whether a debt is "liquidated" for purposes of § 109(e), is determined by "whether the amount due is capable of ascertainment by reference to an agreement or by simple computation." *In re Sylvester*, 19 B.R. 671, 673 (9th Cir. BAP 1982) (quoting *In re Bay Point Corp.*, 1 B.C.D. 1635 (D.N.J.1975)). Accordingly, the BAP adopted the standard of "readily ascertainable" in determining whether a particular debt would be deemed liquidated. *Id.* Additionally, the court held that al-

---

**2.** 11 U.S.C. § 109(e) provides in the pertinent part:

(e) Only an individual with regular income that owes, on the date of such filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular in-

come and such individual's spouse, ... *that owe on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000* and noncontingent, liquidated, secured debts of less than $350,000, may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e) (emphasis supplied).

though the amount may be disputed, such a dispute is "not relevant for purposes of section 109(e)." *Id.*

Although the debtors argue that the Bankruptcy Court erred even under the definition of liquidated debt as set forth in *Sylvester,* the debtors essentially contend that the interpretation of liquidated debt set forth by the Bankruptcy Court in *In re Lambert,* 43 B.R. 913 (Bankr.D.Utah 1984), is a better and more correct view.[3]

In addressing the issue of liquidated debt, the Sixth Circuit Court of Appeals has compared both the *Sylvester* and *Lambert* decisions. *Matter of Pearson,* 773 F.2d 751, 755–57 (6th Cir.1985). The Pearson court pointed out:

> Although the bankruptcy courts agree that a claim is liquidated if its amount is readily ascertainable, the courts are in disagreement as to whether a debt is

unliquidated when there is a substantial dispute regarding liability or amount. 773 F.2d at 754 (emphasis added).[4]

Recently, the Ninth Circuit cited *Sylvester* with approval in holding that where the only issue is whether co-obligors may also be liable on the debt amount, "no dispute as to liability or amount" exists.[5] *In re Fostvedt,* 823 F.2d 305, 306 (9th Cir.1987). In quoting *In re Sylvester,* the Ninth Circuit stated that the question whether a debt is liquidated "turns on whether it is subject to 'ready determination and precision in computation of the amount due.'" *Fostvedt,* 823 F.2d at 306.

The definition of "ready determination" turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability. On this issue, the

---

**3.** In an extensive analysis, the *Lambert* court distinguished between the term "disputed debt" and "disputed claim." *Id.,* 43 B.R. at 918–19. By doing so, the *Lambert* court determined that Congress used the term "debt" instead of "claim" because it "did not wish the Section 109(e) eligibility determination for Chapter 13 debtors to be predicated upon the mere demands of creditors." *Id.* at 919.

The *Lambert* court pointed out that while some courts refuse to allow debtors to exclude disputed debts because it might "encourage debtors to dispute debts in order to come within the eligibility limits," such an interpretation of § 109(e) creates the opposite problem in which creditors might "wittingly or unwittingly, assert false or inflated claims in order to prevent a debtor from obtaining Chapter 13 relief." *Id.* at 920. In view of these conflicting problems, the court determined that "the provisions of Section 109(e) should be liberally interpreted so as not to unnecessarily obstruct the eligibility of debtors desiring relief under Chapter 13." *Id.*

Finally, after discussing the relationship of the terms "noncontingent," "liquidated," and "disputed," as they relate to § 109(e), the Lambert court held that "a debt cannot be certain to the extent there is a bona fide dispute as to its amount or as to the underlying liability of the debtor to pay the debt." *Id.* at 921 (emphasis added) (citing *In re King,* 9 B.R. 376, 378 (Bankr.D.Ore.1981).

**4.** The *Pearson* court would not adopt either the *Sylvester* or *Lambert* decisions, but rather analogized the threshold eligibility determination for Chapter 13 with the threshold subject matter jurisdiction determination in diversity cases

where the $10,000 minimum amount in controversy is challenged. *Matter of Pearson,* 773 F.2d 751, 755–57 (6th Cir.1985). Accordingly, the *Pearson* court determined that "Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith." *Id.* at 757.

The Pearson court pointed out that such an interpretation is "more harmonious with the congressional intent and with the statutory scheme." *Id.* at 756. In support of its interpretation of congressional intent with regard to Chapter 13 eligibility, the *Pearson* court looked at three considerations. First, the court pointed out that the language of § 109(e) provides that "the eligibility computation is based on the date of filing the petition" and there is "nothing about computing eligibility after a hearing on the merits of the claims." *Id.* (emphasis added). Second, the *Pearson* court considered that "the fact that evidence must be taken to determine the amount of the claim indicates that, until then, the claim is unliquidated." *Id.* Finally, the Sixth Circuit recognized that "the Bankruptcy Code contemplates that a Chapter 13 plan be adopted and implemented in a short period of time." *Id.*

**5.** The Ninth Circuit specifically stated: " [e]ven assuming, without deciding that a dispute can render a debt unliquidated, we find no dispute as to liability or amount in the present case." *Fostvedt,* 823 F.2d at 306 (emphasis added). In pointing out that they were not addressing the issue presently before this Panel, the *Fostvedt* court noted the difference between the BAP's decision in *Sylvester* and the Sixth Circuit's opinion in *Pearson. Id.* at 306 nt. 1.

bankruptcy judge has the best occasion to determine whether a claim will require an overly extensive hearing or whether the claim is subject to a bona fide dispute; therefore not subject to "ready determination."

In the instant case, the transcript indicates that the billing statements lumped together fees incurred in the Texas bankruptcy proceedings which did not involve the underlying adversary proceeding and were thus outside the scope of the award of attorneys' fees and costs. However, the bankruptcy court was able to discern the approximate fees for services involving only the adversary proceeding by questioning the attorneys as to the entries. The transcript indicates that this hearing was not overly extensive. Also, after the bankruptcy court's threshold review of the subject fees, it implicitly determined that for purposes of § 109(e) the approximately $35,000 accounting fees and $19,000 attorneys' fees were not subject to a bona fide dispute. Therefore, this Panel is unable to find that the bankruptcy court erred in concluding that the claim for fees was subject to ready determination.

The debtors also argue that *Sylvester* is limited to only "contract debts" (19 B.R. at 673), and that the attorneys' fees in the instant case were not based on any contract or agreement. In distinguishing the instant debt based on an award for costs and attorneys' fees with a contract debt, the debtors point out that the award for attorneys' fees and costs is subject to a "reasonableness" determination. This argument, however, fails to recognize that the bankruptcy court was not making a final determination as to the reasonableness of the attorneys' fees and costs, but was expressly limited to a determination for § 109(e) purposes. The debtors' objection to the reasonableness of the attorneys' fees and costs is analogous to a debtor's assertion of a defense to a contract debt. Such final determinations are more appro-priately addressed in a proceeding to determine the allowance of a specific claim under § 502 and should be separate from the application of § 109(e).

(BAP NO. CC 87–2255)

In this appeal the debtors claim that the court should not have dismissed its Chapter 13 case on the basis that 11 U.S.C. § 109(e) is jurisdictional in nature. The appellee argues that the debtors failed to file a formal motion to convert. This argument overlooks the fact that the bankruptcy court determined that it lacked jurisdiction to enter an order converting the case *even if such a motion had been filed.* Additionally, the debtors' failure to file a motion to convert under § 1307, is explained by the fact that the bankruptcy court's sue sponte dismissal order occurred at the hearing on the appellee's Motion to Lift Stay, *Conversion* or Dismissal. In other words the debtor had no opportunity to file a motion to convert. Finally, it is clear from the transcript of the hearing that the debtors sought to have the case converted rather than dismissed.

As previously mentioned, the bankruptcy court determined that because the debtors did not satisfy the Chapter 13 eligibility requirements, it had no jurisdiction to enter an order converting the case and could only enter an order of dismissal. Thus, it is clear from the record that the bankruptcy court did not consider the merits of converting the case. Since the bankruptcy court's conclusion involves a question of law, this Panel will apply a de novo standard of review. *See In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir. 1985).

In those relatively few cases to formally address the issue of whether the § 109 eligibility requirements are "jurisdictional" in nature, conflicting results have arisen.

In the case of *Matter of Wulf,* 62 B.R. 155 (Bankr.D.Neb.1986), the bankruptcy court considered the language of § 301 to conclude that a Chapter 13 petition filed by an ineligible Chapter 13 debtor, does not constitute the commencement of a case.[6] Accordingly, the court held, "[t]he only remedy available for the proposed debtor is to have the case dismissed...." *Id.* at 158.

Cases refusing to follow the *Wulf* reasoning include *In re Tatsis,* 72 B.R. 908 (Bankr.W.D.N.C.1987), which determined that "[t]he overwhelming weight of authority is thus squarely in favor of allowing conversion [by an ineligible Chapter 13 debtor]." *Id.* at 911. The *Tatsis* court cited eleven (11) cases which although not specifically addressing the application of § 301, recognized the ability of ineligible Chapter 13 debtors to seek conversion of their case. *Id.*

The *Tatsis* court also pointed out two good policy arguments in favor of its ruling.

First, under the *Wulf* decision, a debtor could file a Chapter 13 petition and plan, "delay the creditors and benefit from the provisions of Title 11, and yet never be subject to the jurisdiction of a bankruptcy court." *Id.* Thus, a debtor could obtain the protection of the automatic stay, while at the same time allowing the time period for recovery of a preference to lapse. Then, after a subsequent hearing on the eligibility, if the court determines the debtor ineligible under Chapter 13, the petition would be dismissed for lack of jurisdiction and the debtor would be allowed to file a new petition thereby causing harm to all creditors because of the passing of the preference period. By allowing an ineligible Chapter 13 to be converted, 11 U.S.C. § 348 would prevent the above scenario because of the principle that conversion of a case "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a).

The second policy argument recognized by the *Tatsis* court was stated as follows:

There are many instance in which Chapter 13 cases are filed where the qualifications of the debtor under § 109(e) might be called into question. In such a case, when no issue is raised by a party in interest, the case will be administered pursuant to Chapter 13. Can someone then come one, two or three years after confirmation and question the jurisdiction of the court? Can a creditor sue a debtor after discharge in Chapter 13, alleging that the bankruptcy court never had jurisdiction?

*In re Tatsis,* 72 B.R. at 911.

Several other cases have also disagreed with the reasoning of the *Wulf* decision. *See In re Orr,* 71 B.R. 639, 642–43 (Bankr. E.D.N.C.1987) (holding that an ineligible Chapter 12 debtor may convert to Chapter 11 and recognizing "[t]he Code ... should not be interpreted so narrowly as to preclude all conversions by ineligible chapter 12 and chapter 13 debtors to chapter 11"); *Matter of Bird,* 80 B.R. 861, 863 (Bankr.W. D.Mich.1987) (declining to follow the reasoning of *Wulf* because "to do so might lead to a possible abuse of the bankruptcy process or otherwise lead to inequitable results."); *In re Jarvis,* 78 B.R. 288, 289 (Bankr.D.Ore.1987) (holding that a debtor's eligibility under § 109 is not necessary to confer upon the court subject matter jurisdiction over the case).

Further support for holding that § 109(e) eligibility is not jurisdictional in nature may

---

**6.** 11 U.S.C. § 301 reads as follows:
A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

be derived by implication from the language of § 109 which states nothing of the bankruptcy court's subject matter jurisdiction, but concerns only the "eligibility of debtors for relief." *See In re Republic Trust & Savings Co.*, 59 B.R. 606, 609 (Bankr.N.D.Okl.1986). In this regard, it is important to note that the Bankruptcy Code defines a "debtor" as a "person or municipality concerning which a case *under this title* has been commenced." 11 U.S.C. § 101(12) (emphasis added).

Accordingly, this Panel concludes that § 109 eligibility is not jurisdictional and this case is remanded to the bankruptcy court to allow the debtors the opportunity to file and have considered a motion to convert their case.

## CONCLUSION

Based on the foregoing, the bankruptcy court's determination that the attorneys' fees arising from the Texas bankruptcy litigation were "liquidated" for purposes of § 109(e) is AFFIRMED. Additionally, the case is remanded to allow the debtors to file a motion to convert pursuant to § 1307(a) and to allow the bankruptcy court the opportunity to address the merits of such motion.