**In re Arthur Lionel SCOVIS, Debtor.**

**Christen Brun Henrichsen, Appellant,**

**v.**

**Arthur Lionel Scovis and Jenny Scovis, Appellees.**

**BAP Nos. CC–98–1064–BKJ, CC–98–1219. Bankruptcy No. SV 96–22481–KL.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Dec. 2, 1998.

Decided March 5, 1999.

Christen Brun Henrichsen, pro se.

Karen L. Grant, Grant & Hurlbett, Santa Barbara, CA, for Arthur Lionel Scovis and Jenny Scovis.

Before BRANDT, KLEIN, and JONES, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Appellant objected to the debtors' Chapter 13 plan on grounds of ineligibility and lack of good faith. The bankruptcy court overruled appellant's objections and confirmed the plan. Concluding that the debtors' homestead exemption must be considered in determining their eligibility, we REVERSE and REMAND.

## I. FACTS

Debtors Arthur and Jenny Scovis filed a Chapter 11 [1] petition in February of 1994.

---

**1.** Absent contrary indication, all section and chapter references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq., and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

At the time, both debtors were attorneys actively practicing law under the law partnership of Scovis and Scovis. The case was converted to Chapter 7 in August of 1994, and their discharge was granted on 13 March 1995.

During the Chapter 7 case, creditor/appellant Christian Brun Henrichsen, also an attorney, obtained judgment declaring the Scovises' debt to him on a state court judgment obtained in 1993 nondischargeable under § 523(a)(6). On appeal, this Panel affirmed, as did the Ninth Circuit in an unpublished memorandum. *In re Scovis,* 142 F.3d 445 (9th Cir.1998).

In September of 1995, debtor Arthur Scovis underwent quadruple bypass surgery. He was also diagnosed with severe insulin-resistant diabetes, which ultimately left him visually impaired and with a severe disability (his right foot). Shortly thereafter, the debtors filed a Chapter 13 petition, which they voluntarily dismissed in March of 1996 because they wished to resolve certain claim litigation outside the Chapter 13 case, intending to re-file later if necessary.

The Scovises filed the instant Chapter 13 case on 25 October 1996. On 8 November, the debtors filed an apparent amendment to their original petition, in which the "Nature of Debt" was changed from "Business" to "Non–Business," the estimated number of creditors and estimated liabilities were increased, and the signature of their attorney was added. In their schedules, the debtors listed their residence with a value of $325,000, encumbered by a first trust deed in favor of Great Western Bank of $249,026.91 and the Henrichsen judgment lien of $208,000. They claimed a $100,000 homestead exemption under Cal.Civ.Proc.Code (henceforth "CCP") § 704.710. (Presumably the citation should have been to CCP § 704.730(3)). In Schedule D, the Henrichsen claim was listed as unsecured in the amount of $132,026.91; the unsecured portion was not listed in Schedule F. Priority claims of $6,000 and general unsecured claims of $40,499.83 were listed on Schedules E and F, respectively.

The debtors also listed as secured a debt of $4,136.00 to Mary Scovis, Arthur Scovis's mother, for a loan she had made for the purchase a vehicle. However, they had neither executed a written security agreement nor listed Mary Scovis as a lienholder on the title to the car. Approximately a year after the petition, in the final throes of their confirmation battle, the debtors filed a declaration from Mary Scovis in which she waived any unsecured claim.

The plan called for monthly payments over 60 months, resulting in a 4% payout to general unsecured claims of $172,499.83, an amount including the unsecured portion of Henrichsen's claim as Scovises calculated it.

Henrichsen filed a general unsecured claim in November, 1996 for $219,691.06, which included interest to the date of the proof of claim. The debtors did not object.

Henrichsen objected to confirmation, asserting that the debtors' plan had not been proposed in good faith: specifically, that the debtors were misusing the automatic stay to avoid a nondischargeable judgment, that their schedules were inaccurate, and their proposed payments were inadequate. Thereafter, debtors amended Schedule F to delete three creditors who had been paid by insurance or other sources. The general unsecured claims listed totaled $22,919.85. On debtors' motion, Henrichsen's judicial lien against their residence was avoided by order entered on 23 April 1997.

The confirmation hearing was initially set in May, but was continued several times for discovery relating to Henrichsen's objection. In August, the debtors again amended Schedule F, adding a disputed, unliquidated debt to Jeannine Berry, based on a malpractice claim filed against them in Los Angeles County Superior Court in March of 1995. A default judgment for $221,400 had been entered in December 1996 in violation of the automatic stay.

In September Henrichsen filed a supplemental memorandum and a declaration in support of his objection to confirmation and request for dismissal, first raising the issue of eligibility, based on the addition of the Berry claim. The court continued confirmation to 20 October for briefing on the issue. Mary Scovis's somewhat equivocal declara-

tion regarding her claim was filed as an exhibit to debtors' final prehearing memorandum. In that declaration, she asserted an undocumented security interest in the vehicle but waived any unsecured claim.

At the 20 October hearing, the bankruptcy judge determined that the debtors met the eligibility requirements, treating Henrichsen's lien as partially secured by the value of debtors' home in excess of the first deed of trust, notwithstanding the exemption. Concluding that the Berry claim was not discharged in the Chapter 7 case, but was unliquidated on the petition date, the bankruptcy judge excluded it from the eligibility calculation. In addition, the court found that Henrichsen had not overcome the debtors' responses to his various allegations of bad faith, but declined to make specific findings.

The order denying objection to confirmation was entered 17 November 1997. Henrichsen moved for reconsideration, asserting that the court had never ruled on his objection to debtors' expenses. The court agreed to entertain argument on that issue at a continued confirmation hearing, and in January of 1998 conditioned confirmation on the reduction of some budget items. The debtors filed an amended Chapter 13 plan on 10 February 1998, reflecting those reductions in expense items. Henrichsen filed another objection to confirmation, this time asserting that the plan did not meet the best interests test, that the debtors had manipulated figures, that the debtors had omitted any explanation of why no Social Security disability payments were scheduled, and complaining that there was no provision for the sale of non-exempt assets. None of these objections were raised in this appeal.

At a hearing on 9 March 1998, the bankruptcy court confirmed the debtors' amended plan, entering an order on 17 March 1998. The confirmed plan provided for monthly payments of $659.00 and a 5% payout to unsecured creditors. Henrichsen timely appealed.

## II. ISSUES

Whether the debtors' unsecured debts exceeded the Chapter 13 eligibility limit of § 109(e).

If debtors were eligible, whether their plan was proposed in good faith.

## III. STANDARDS OF REVIEW

■ We review statutory interpretation issues in Chapter 13 plan confirmations de novo. *In re Martin,* 156 B.R. 47, 49 (9th Cir. BAP 1993); *In re Wenberg,* 94 B.R. 631, 633 (9th Cir. BAP 1988), *aff'd* 902 F.2d 768 (9th Cir.1990).

■ A bankruptcy court's determination of the amount of the debts to be included in the eligibility calculation is a finding of fact reviewed under a clearly erroneous standard, *see In re Loya,* 123 B.R. 338, 340 (9th Cir. BAP 1991), as is the determination that a Chapter 13 plan is proposed in good faith. *In re Padilla,* 213 B.R. 349, 352 (9th Cir. BAP 1997) (citing *In re Metz,* 820 F.2d 1495, 1497 (9th Cir.1987)). A finding of fact is clearly erroneous if the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

## IV. ELIGIBILITY

A. *Positions:*

According to Henrichsen, the debtors' unsecured debts exceeded $250,000 on the petition date, thus rendering the Scovises ineligible for Chapter 13 relief. Section 109(e) then provided that "[o]nly an individual with regular income that owes, on the date of filing the petition, noncontingent, liquidated, unsecured debts of less than $250,000 ... may be a debtor under Chapter 13 of this title."

Henrichsen asserts that his judgment lien was wholly unsecured on the petition date. He reaches this conclusion by taking the value of the debtors's residence of $325,000 and deducting the debtors' homestead exemption of $100,000. Because the remaining $225,000 is less than the secured claim of Great Western Bank, he asserts that his debt was completely unsecured. Henrichsen argues that California law renders his judgment lien unenforceable, because there was no equity in the property after deducting

prior secured interests and the homestead exemption. CCP § 704.780(b). Moreover, he argues the debtors knew the debt was unsecured, because they planned to avoid the lien, as evidenced by the acknowledgment of debtor's counsel of a $500 deposit for filing the motion.

Henrichsen's calculation is:

| | |
|---|---|
| Priority unsecured claims | $ 6,000.00 |
| General unsecured claims per original schedules | $ 40,499.83 |
| Henrichsen claim (as filed) | $219,691.06 |
| Mary Scovis claim | $ 4,136.00 |
| Total Unsecured Claims | $270,326.89 |

His proof of claim included interest to the date of the proof of claim, rather than to the petition date; recalculating the interest to the petition date results in a figure of $218,847.22. The $834.84 discrepancy is not dispositive.

Henrichsen contended that the Berry claim should have been included in the calculation as well, but did not seek review of the ruling that was unliquidated and thus excluded, nor did Berry, who had also objected to confirmation. The bankruptcy judge did not explicitly rule on the characterization of the Mary Scovis claim.

Debtors argue that the bankruptcy judge correctly determined the unsecured portion of Henrichsen's claim by deducting the secured claim of Great Western Bank from the fair market value of the residence ($325,000.00 – $249,026.91), leaving a secured claim of $75,973.00, and $132,026.91 unsecured. Adding general unsecured claims of $22,919.85 and priority unsecured claims of $6,000.00 brings the total to $172,637.91. Even if the original $40,499.83 figure for general unsecured claims is used, under the latter calculation, the total unsecured claims are $190,217.89, well under the $250,000 limit.

Fundamentally, debtors' argument was (and is) that eligibility must be determined as of the petition date, and that Henrichsen's lien was not avoided until later.

The bankruptcy court rejected Henrichsen's argument that his judgment lien was unsecured on the petition date: "It is my opinion that you look at the legal effect on the date of filing. You do not look to see what the debtor can do under the provisions of the United States bankruptcy law to affect those rights."

B. *Authorities:*

The parties cite no case law clearly supporting their positions. Henrichsen cites *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36 (9th Cir. BAP 1997) for the proposition that when a lien attaches to nothing, it ceases to be a secured claim. However, *Lam* deals not with eligibility but with the Chapter 13 claims allowance process. He also cites to *Oliver v. Bledsoe*, 5 Cal.App.4th 998, 1004 n. 4, 7 Cal.Rptr.2d 382 (1992), but the footnote and accompanying text state only that, under California's Uniform Commercial Code, lien creditors and secured parties are distinguishable. Henrichsen's argument seems to be that no lien ever attached to the homestead under state law; therefore, the debt was unsecured on the petition date. That would be true if the Scovises had recorded a homestead declaration prior to the recording of Henrichsen's judgment. *See* CCP § 704.950; *In re Amiri*, 184 B.R. 60, 62 (9th Cir. BAP 1995).

California law provides two alternative mechanisms for protecting the homestead: the declared and the non-declared homestead exemption. Under the declared homestead exemption, once a declaration of homestead is properly recorded, a judicial lien may only attach to equity remaining in the property after subtracting all prior liens and the declared homestead exemptions. CCP § 704.950; *Amiri*, 184 B.R. at 62. Under the non-declared or "automatic" homestead exemption, judgment liens may still attach, but in the event of a forced sale, the proceeds must be distributed to consensual lienholders and the judgment debtors in satisfaction of their homestead exemption before the judgment creditor receives anything. CCP § 704.850; *Amiri*, 184 B.R. at 63.

The record does not disclose whether the Scovises ever recorded a declaration of homestead. Whether declared or not, the practical effect under California law is the same: the homestead trumps the judgment lien, and the debtor's exemption is deducted

from the proceeds of the homestead before the judgment creditor recovers.

There is no dispute that the unsecured portion of Henrichsen's claim should be included in the calculation of unsecured debt. *See In re Day,* 747 F.2d 405, 406–07 (7th Cir.1984), noting that bankruptcy courts use a § 506(a) determination to bifurcate undersecured debts into secured and unsecured portions, adding the unsecured portion to the remaining unsecured debts to determine whether the debtor is eligible for Chapter 13 under § 109(e). *See* 1 Keith M. Lundin, *Chapter 13 Bankruptcy,* § 1.64, n. 239, 240 and accompanying text (2d ed. 1994 & Supp. 1997–98).

### C. *The Question:*

We must decide whether a judgment lien, avoidable under § 522(f), should be treated as unsecured to the extent of the homestead claimed in debtors schedules for purposes of eligibility. The bankruptcy court concluded that, because the lien had not been avoided on the petition date, the debt was partially secured by the excess over prior liens, without deduction for the exemption.

The Sixth Circuit has held that, in the absence of evidence of bad faith, Chapter 13 eligibility should normally be determined by the debtor's schedules, without regard to post-petition events. *See In re Pearson,* 773 F.2d 751, 757 (6th Cir.1985). We agree, with the qualification that the "bankruptcy court should look past the schedules to other evidence submitted when a good faith objection to the debtor's eligibility has been brought by a party in interest." *In re Quintana,* 107 B.R. 234, 239 n. 6 (9th Cir. BAP 1989), *aff'd,* 915 F.2d 513 (9th Cir.1990) (a Chapter 12 case, construing § 109(f), which by incorporating a definition in § 101 (then (17A), now (18A), is parallel in structure to § 109(e)).

This approach is consistent with the need for expediency in determining eligibility, recognized in *In re Nicholes,* 184 B.R. 82, 87 (9th Cir. BAP 1995). Accordingly, at the eligibility stage, a bankruptcy court is not required to conduct proceedings to determine the allowance of specific claims. *See In re Wenberg,* 94 B.R. at 635, observing that the

debtor's objection to the amount of a claim is "more appropriately addressed in a proceeding to determine the allowance of a specific claim under § 502 and should be separate from the application of § 109(e)." The bankruptcy court's approach was generally consistent with these rules.

Nevertheless, the case most nearly on point is contrary. *In re Toronto,* 165 B.R. 746 (Bankr.D.Conn.1994). In *Toronto,* the Chapter 13 debtors listed on Schedule D a creditor's $175,000 lien, which had been obtained by way of an attachment on their residence one month prior to their petition. The schedules described the claim as unsecured because it was avoidable as a preference; however, it was not listed on Schedule F. The debtors subsequently obtained judgment avoiding the attachment as a preferential transfer under § 547.

In *Toronto,* as here, the schedules disclosed that the nominally secured claim would perforce be rendered unsecured, and the debtors' proposed treating it as such in their plan. The creditor filed a motion to convert or dismiss, alleging that the debtors were ineligible for Chapter 13 relief because its attachment was void *ab initio,* and thus the debtors did not meet the Chapter 13 eligibility requirements on the petition date. The bankruptcy court agreed, citing § 502(h), which provides,

"[a] claim arising from the recovery of property under section 522, 550 [after an avoidance action under § 547], or 553 of this title shall be determined, and shall be allowed ... or disallowed ... the same as if such claim had arisen before the date of the filing of the petition."

The court reasoned that the creditor's

unsecured claim arose as a result of the debtors' 'recovery' of their residence ... by the avoidance of the involuntary 'transfer' of a lien to the movant.... Section 502(h) therefore mandates that the movant's claim be determined and allowed as though it had arisen before the date the petition was filed.

*Toronto,* 165 B.R. at 753.

While acknowledging that debtors might benefit creditors while losing eligibility for

Chapter 13 relief, the court reasoned that its interpretation of § 502(h) as affecting the § 109(e) determination furthered the congressional purposes of (1) limiting the availability of relief to those who satisfy statutory eligibility criteria; (2) avoiding transfers to maximize distribution to creditors; and (3) treating equally similarly-classified creditors. *Toronto*, 165 B.R. at 753. In addition, the court was concerned that debtors could avoid § 109(e) by allowing creditors to obtain prepetition attachments, transforming unsecured into secured debts, if § 502(h) were not considered. *Toronto*, 165 B.R. at 754.

The *Toronto* court concluded that its approach was consistent with the bifurcation of claims under § 506(a):

Applying § 506(a) to § 109(e) 'avoid[s] the temptation to raise form over substance' by determining the true amount of unsecured and secured debt that existed on the petition date, [*Day*], 747 F.2d at 407, and applying § 502(h) to treat claims that are only secured by voided liens as unsecured serves a similar function.

*Toronto*, 165 B.R. at 754. Finally, the court was swayed by the equities:

The debtors' schedules and initial plan show that the debtors intended to treat the movant's claim as unsecured from the inception of the case. The debtors knew or should have known from the inception of the case that the avoidance of the movant's lien would result in the creation of a large prepetition unsecured claim which would defeat their petition.

*Toronto*, 165 B.R. at 754–55 (citations omitted).

■ While this case involves § 522 rather than § 547, the *Toronto* approach is applicable here, as § 502(h) encompasses transfers avoided under § 522. We agree with *Toronto* that § 502(h) must be considered in the § 109(e) analysis, and that Henrichsen's debt should be treated as wholly unsecured on the petition date.

■ This result is not inequitable, given that "[a]n exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114

L.Ed.2d 350 (1991). The debtors here declared their $100,000 homestead exemption on Schedule C, withdrawing that interest from the estate and creditors for their own benefit, absent a successful objection.

■ As a debt is a liability on a claim, § 101(12), and a secured claim is a claim "secured by a lien on property in which the estate has an interest ...," § 506(a), it follows that a claim "secured" by exempt property is unsecured to the extent of the exemption. See *In re Quintana*, 915 F.2d 513, 516–17 (9th Cir.1990), holding "debt" coextensive with "claim" in determining Chapter 12 eligibility, citing *Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 557, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

Further, this resolution is consistent with the treatment of the unsecured portion of an undersecured debt as unsecured for Chapter 13 eligibility. As noted above, that is the analysis of the vast majority of bankruptcy courts, and of the only circuits which have considered the question.

■ Finally, debtors may not play fast and loose with courts by taking inconsistent positions:

The doctrine of judicial estoppel provides that a party may not gain an advantage "by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir.1996) (after plaintiff asserted she was unable to work for purposes of her disability claim, she could not later assert that age discrimination was the true cause for her not working).

*Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 419 (9th Cir. 1998), finding the doctrine inapplicable as the trial court's ruling, which was inconsistent with the party's later position, had not been asserted or argued by that party.

Even if it is necessary that the court must have adopted the prior inconsistent position for judicial estoppel to apply, as the Ninth Circuit stated in *Masayesva v. Hale*, 118 F.3d 1371, 1382 (1997), a requirement not articulated in *Cigna Property and Cas.*, and

attributed to, but not resolved, in *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 716 (9th Cir.1990)), here the bankruptcy court had given effect to the Scovises' claim of exemption by avoiding Henrichsen's judgment lien. *See also Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir.1998), interpreting *Masayesva* as adopting the rule.

## D. *Eligibility:*

 This does not end the inquiry, for the amounts of the other unsecured debts in the eligibility calculation must still be determined. Under the authorities cited above, the correct figures are ascertained by using the debtors' schedules as a starting point, while taking into account other evidence of the correct figures as of the petition date. There is no dispute that the priority unsecured claim figure of $6,000.00 should be included. The correct amount for the Henrichsen claim is $218,847.22, which includes interest to the petition date. The nature of Mary Scovis's claim of $4,136.00 must be determined, for the debtors are ineligible for Chapter 13 relief, even using amended Schedule F, if her claim was unsecured:

| | |
|---|---|
| Henrichsen claim | $218,847.22 |
| Mary Scovis claim | $    4,136.00 |
| Priority unsecured claims | $    6,000.00 |
| General unsecured claims | $  22,919.85 |
| Total Unsecured Claims | $251,903.07 |

Because the bankruptcy court predicated its eligibility calculation on an erroneous view of the law, we must reverse the confirmation.

## V.   GOOD FAITH

Lacking specific findings, we are unable to review the bankruptcy court's determination that the Scovises proposed their plan in good faith, *In re Tucker*, 989 F.2d 328, 330 (9th Cir.1993), or whether an evidentiary hearing was required.

## VI.   RECONSIDERATION

As we are reversing the order which Henrichsen sought to have reconsidered, we need not address his appeal of the denial of that motion.

## VII.   CONCLUSION

Debtors proposed from the outset to treat Henrichsen's claim as partially secured for eligibility and wholly unsecured in their plan. While we construe the Bankruptcy Code to accord to the Scovises the full measure of relief accorded by Congress, *Wright v. Union Central Ins. Co.*, 311 U.S. 273, 278–279, 61 S.Ct. 196, 85 L.Ed. 184 (1940) (under Bankruptcy Act), we cannot countenance the exemption arbitrage here attempted.

Debtors' unsecured debts may exceed § 109(e)'s limit; we therefore REVERSE the confirmation and REMAND for determination of Scovises' eligibility for Chapter 13 relief, and for findings regarding their good faith if they are eligible.