**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-16-1042-FDKu |
| ) | |
| SOAMES LANE TRUST, ) | Bk. No.   2:15-bk-24678-BB |
| ) | |
| Debtor. ) | |
| _____ ) | |
| SOAMES LANE TRUST, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| ROSENDO GONZALEZ, Chapter 7 ) | |
| Trustee; UNITED STATES ) | |
| TRUSTEE,[**] ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on July 28, 2016
at Pasadena, California

Filed – August 8, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sheri Bluebond, Bankruptcy Judge, Presiding

_____

Appearances:   Stuart J. Wald argued for Appellant Soames Lane
Trust; Irv Gross of Levene, Neale, Bender, Yoo &
Brill LLP argued for Appellee Rosendo Gonzalez,
Chapter 7 Trustee.

_____

Before: FARIS, DUNN, and KURTZ, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

[**] The United States Trustee did not file an answering brief
or otherwise participate in this appeal.

**INTRODUCTION**

Debtor Soames Lane Trust (the "Trust") appeals the bankruptcy court's denial of its motion to dismiss its chapter 11[1] case. The bankruptcy court held that judicial estoppel precluded the Trust from arguing that it is not a "business trust" and cannot be a debtor. On appeal, the Trust argues that the bankruptcy court lacked subject matter jurisdiction pursuant to § 109(d) and should have dismissed the case, rather than converting it to chapter 7. We conclude that the Trust's jurisdictional argument is wrong and that the court did not err in applying judicial estoppel. Accordingly, we AFFIRM.

**FACTUAL BACKGROUND[2]**

**A. Colin's criminal case, the creation of the Trust, and the bankruptcy filing to protect the Property**

Grover Henry Nix IV, a.k.a. Colin Nix ("Colin"), owned valuable real property on Aberdeen Avenue in Los Angeles, California (the "Property"). The Property was subject to a deed of trust in favor of Chase Bank.

In 2013, Colin was arrested on two federal criminal indictments for alleged securities law violations. The federal

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

[2] We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

2

government alleged that Colin was part of a group of penny stock manipulators who had cheated 20,000 victims out of $30 million. Colin pled guilty to a single count of conspiracy and has been in prison since February 2013. The Department of Justice ("DOJ") asserted a claim against the Property, identifying it as a source of funds for the victims' restitution.

In 2015, after Colin pled guilty, Chase recorded a notice of default and scheduled a trustee's sale for September 2015. The DOJ also scheduled a series of restitution hearings to prove damages (and presumably seize the Property under the DOJ's Asset Forfeiture Program).

Faced with foreclosure and forfeiture of the Property, Colin's father, Grover H. Nix III ("Grover"), formed the Trust and appointed himself trustee. Colin, as settlor, transferred the Property into the Trust in August 2015.

On September 23, 2015, just one day before the scheduled trustee's sale, the Trust filed its chapter 11 petition. The Trust admitted that "[t]he filing was made to stop the scheduled Chase foreclosure sale on September 24, 2015." In its filings, the Trust identified itself as a business trust and included supporting statements and documentation, including: (1) an attachment to Schedule A that states that Colin conveyed the Property to Grover "as Trustee of a revocable business trust, by Grant Deed"; (2) a declaration of business trust that specifies the Trust's business purposes; (3) a statement in Schedule G that the Trust leased the "mixed use" property for a three-year term to EuroWest Global LLC, which uses the Property as a "corporate headquarters"; and (4) explanations in Schedule I that the Trust

3

is a business trust.

Shortly thereafter, the criminal court ordered that the government could not seek restitution from Colin. With the threat of forfeiture removed, the Trust decided that Colin could cure and reinstate the deed of trust and that the Trust no longer needed bankruptcy protection.

**B.    The motions to dismiss and the Trust's shifting positions**

In the meantime, the United States Trustee had filed a motion to dismiss or convert the chapter 11 case. It noted a number of deficiencies with the Trust's filings, including that it is a single asset real estate debtor; it did not file a disclosure statement or plan; it did not file various declarations, questionnaires, and financial information; and it did not pay any quarterly fees. The U.S. Trustee asserted that the Trust "is a non-business trust and that the bankruptcy was not filed in good faith." In support of its argument, it stated that the Property is a residence; the Property contained only personal property valued at over $2 million; there was no evidence that the Property or contents had been insured; Schedule E only listed Colin's personal obligations, and the debts are primarily consumer debts; Schedules I and J did not reflect rental income or other business income related to the Property; and the Trust was formed only a month before it initiated the bankruptcy case.

In response, the Trust argued (among other things) that "Soames Lane Trust is in fact established under the text book definition of a business trust." It contended that "[a] Massachusetts Business Trust was created and [Colin's] father was

4

appointed Trustee." The Trust offered Grover's declaration, in which he opined that the Trust was a business trust and stated:

> I personally created the Soames Lane Trust. I have extensive familiarity with Massachusetts Business Trusts, having operated one for my real estate investments for over 30 years. I recently created two business trusts for two companies both of whom had their business trusts reviewed by the respective law departments of Wells Fargo Bank and Chase Bank. Both business trusts were approved, and are operating today.

Before the U.S. Trustee's motion could be heard, the Trust filed its first motion to dismiss. It did not address its status as a business trust, but only argued that it no longer required bankruptcy protection, since the Property was no longer the target of DOJ forfeiture: "[p]rotection and 'the safe harbor' provided by the Bankruptcy Court is no longer required as the principle asset sought to be protected by the filing, the single family home of Colin Nix, is no longer a target of Department of Justice 'asset forfeiture program'."

On November 2, 2015, Colin filed his personal chapter 11 petition. That case was dismissed in December 2015 with a 180-day bar on refiling.

The court heard the U.S. Trustee's motion to dismiss on November 5, 2015. It granted the motion and converted the case to one under chapter 7. Appellee Rosendo Gonzalez was appointed as chapter 7 trustee ("Trustee").

On December 10, the Trust filed a second motion to dismiss, wherein it argued for the first time that it was not a business trust. The Trust failed to set the motion for hearing.

The court heard arguments on the Trust's first motion to dismiss on December 16, 2015 and denied that motion.

5

On December 24, 2015, the Trust filed a third motion to dismiss, which is the subject of this appeal ("Third Motion to Dismiss"). It argued that the Trust was not a "business trust" under relevant California law, because "(a) the Trustee is completely prohibited (without the prior consent of the Settlor) from selling the residence, the single asset of the trust . . . , and (b) the Settlor retains the right at all times to immediately terminate the trust . . . ." The Trust attached Grover's declaration, which offered various legal conclusions that the Trust was not a business trust. (He asserted these conclusions with the same boundless confidence with which he had stated the opposite views a short time earlier.)

In opposition, the Trustee argued that the Trust had maintained from the inception of the case that it was a business trust eligible to be a debtor in bankruptcy. It argued that the Trust was judicially estopped from asserting that it was not a business trust.

The court held a hearing on the Third Motion to Dismiss. It announced its tentative ruling indicating that it was inclined to deny the motion, based on the Trust's previous representations that it was a business trust. It recounted its initial concern whether the Trust was an eligible debtor, and in response the Trust and Grover were adamant that the Trust was a "business trust." The court stated that "we had some discussions about that because at one point we were talking do we dismiss or do we convert." However, "in reliance on [the Trust's representations, the court] converted the case." Although the Trust completely changed its position in the Third Motion to Dismiss, the court

6

noted that "there have been statements made under penalty of perjury and on the record. . . . I've continued to rely from the get-go on that, and we've operated on that assumption. So we're going to continue operating on that assumption. Debtor can't change course now when it serves the debtor's convenience to decide no, now I'm not a business trust." It thus concluded that judicial estoppel prevented the Trust from claiming that it was not an eligible debtor.

The court also confirmed with the Trustee that he had been administering the Property and had retained a broker to inspect and market the Property.

The court issued its order denying the Third Motion to Dismiss on February 4, 2016. The Trust timely appealed.

## JURISDICTION

Subject to our discussion below, the bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in declining to dismiss the Trust's bankruptcy case on the ground that it is not a business trust.

## STANDARDS OF REVIEW

We review de novo whether the bankruptcy court had subject matter jurisdiction over a particular case. See McCowan v. Fraley (In re McCowan), 296 B.R. 1, 2 (9th Cir. BAP 2003) ("Whether a court has subject matter jurisdiction is a question of law that we review de novo."); Odd-Bjorn Huse v. Huse-Sporsem, A.S. (In re Birting Fisheries, Inc.), 300 B.R. 489, 497 (9th Cir.

7

BAP 2003) ("Subject matter jurisdiction is a question of law."). "De novo review requires that we consider a matter anew, as if no decision had been made previously." Francis v. Wallace (In re Francis), 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review the bankruptcy court's application of the doctrine of judicial estoppel for an abuse of discretion. See Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001); see also Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983, 992 (9th Cir. 2012) ("Federal law governs the application of judicial estoppel in federal courts, and a district court's application of judicial estoppel is reviewed for abuse of discretion.").

We review the denial of a debtor's motion to voluntarily dismiss its bankruptcy case for an abuse of discretion. Hickman v. Hana (In re Hickman), 384 B.R. 832, 836 (9th Cir. BAP 2008); Leach v. United States (In re Leach), 130 B.R. 855, 856 (9th Cir. BAP 1991) ("The granting or denial of a voluntary motion to dismiss rests within the sound discretion of the judge and is reversible only for an abuse of discretion.").

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

8

**DISCUSSION**

**A.    The court had subject matter jurisdiction over the Trust's bankruptcy case.**

The Trust's primary argument is that the court should have dismissed the bankruptcy case, rather than converting it, because it lacked subject matter jurisdiction over the case. This argument flies in the face of binding precedent.

Section 109(a) provides that "only a **person** . . . may be a debtor under this title." (Emphasis added.) Similarly, subsection (d) provides that "a **person** that may be a debtor under chapter 7 of this title . . . may be a debtor under chapter 11 of this title." (Emphasis added.) The Code defines a "person" as including "individual, partnership, and corporation[,]" § 101(41), where "corporation" includes a "business trust[,]" § 101(9). Conversely, the broader term "entity" includes a "trust." § 101(15). As such, a "business trust" is a "person that may be a debtor," while other forms of trust are not.

It is well accepted that only a business trust - as opposed to an individual or personal trust - is eligible to be a debtor under the Bankruptcy Code. See Hunt v. TRC Props., Inc. (In re Hunt), 160 B.R. 131, 135 (9th Cir. BAP 1993) ("the majority of case law considering this issue also concludes that a non-business trust is not a 'person'"); In re McCarthy, 312 B.R. 413, 419 (Bankr. D. Nev. 2004) ("it is undisputed that only a business trust is eligible to file a bankruptcy petition. A nonbusiness trust is not eligible").

The Trust contends that the court lacked subject matter jurisdiction over the case because the Trust was not a "business

9

trust" under § 101(9) and therefore could not be a "debtor" under § 109(a) and (d). It argues that the court erred in relying on judicial estoppel to create jurisdiction where there is none.

The premise of the Trust's argument is that debtor eligibility under § 109 is a limit on subject matter jurisdiction. This premise is false.

This Panel has repeatedly held that the bankruptcy court has subject matter jurisdiction even if the debtor is ineligible under § 109. See Mendez v. Salven (In re Mendez), 367 B.R. 109, 117-18 (9th Cir. BAP 2007) (holding that the debtor's ineligibility under § 109(h) does not deprive the bankruptcy court of subject matter jurisdiction); Fed. Deposit Ins. Corp. v. Wenberg (In re Wenberg), 94 B.R. 631, 636-37 (9th Cir. BAP 1988), aff'd, 902 F.2d 768 (9th Cir. 1990) (same, under § 109(e)).

This is consistent with the Supreme Court's jurisprudence that:

> **when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional.** Applying that readily administrable bright line to this case, we hold that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue.

Arbaugh v. Y&H Corp., 546 U.S. 500, 515-16 (2006) (emphasis added) (construing 42 U.S.C. § 2000e).

Under Wenberg and Mendez, § 109 requirements implicate eligibility to be a debtor, not the court's subject matter jurisdiction. Following the Supreme Court's bright-line test in Arbaugh, we note that § 109 "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." Id. at 515. Accordingly, we reaffirm our previous

10

decisions concluding that "§ 109 eligibility is not jurisdictional." See In re Wenberg, 94 B.R. at 637; see also 2 Collier on Bankruptcy § 109.02[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2016) ("Section 109 is not characterized in terms of venue or jurisdiction by the statute itself, and **it is clear that it is not jurisdictional**. Section 109 is a rule governing eligibility for relief." (emphasis added)). We hold that this principle applies to the "person" requirement of § 109(a) and (d).

We find no merit to the Trust's jurisdictional argument.

**B.    The bankruptcy court did not abuse its discretion in applying judicial estoppel.**

We next consider whether the court abused its discretion in applying judicial estoppel when it denied the Third Motion to Dismiss.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . ." Baughman v. Walt Disney World Co., 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). Judicial estoppel is meant "to protect the integrity of the judicial process by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" Id. (quoting New Hampshire, 532 U.S. at 749-50).

In deciding whether the bankruptcy court abused its discretion in utilizing judicial estoppel, we consider whether: (1) the party's later position is clearly inconsistent with its

11

earlier position; (2) the party succeeded in persuading a court to accept its earlier position, creating a perception that the court was misled; and (3) the party seeking to assert an inconsistent position will derive an unfair advantage or impose an unfair detriment on the opposing party. Id.; see Milton H. Greene Archives, Inc., 692 F.3d at 995 ("chicanery or knowing misrepresentation by the party to be estopped is a factor to be considered in the judicial estoppel analysis and not an 'inflexible prerequisite' to its application").

### 1. Inconsistent later position

First, it is undisputed that the Trust adopted a position inconsistent with its earlier position. The Trust repeatedly, adamantly, and unequivocally represented that it was a business trust. As the bankruptcy court correctly observed, the Trust "was very adamant that, no, no, it's an eligible debtor."

When the Trust no longer wanted bankruptcy protection, it abruptly reversed its position. The Trust is therefore advocating a position that is the exact opposite of its earlier arguments and representations.

### 2. Misleading the court

Second, the Trust persuaded the bankruptcy court to accept its earlier position, thereby creating the impression of misleading the court.

In response to the U.S. Trustee's motion to dismiss or convert the case, the Trust argued that it was the "text book definition" of a business trust. Grover submitted a declaration stating that he had intended to create a business trust. The Trust's schedules repeated this assertion.

12

The bankruptcy court accepted the Trust's representation that it was a business trust. It said that it was for that reason it had converted rather than dismissed the case. The court stated:

> The principal of the debtor gave me this whole declaration about what an expert he is on Massachusetts business trusts and how this absolutely is a business trust and absolutely is eligible to file. **And we had some discussions about that because at one point we were talking do we dismiss or do we convert**.
>
> And the debtor was very adamant that, no, no, it's an eligible debtor and therefore we should convert, which is what we did.
>
> The trustee's now -- **and in reliance on that I converted the case**. The trustee's now gotten involved. The trustee's incurred time and effort in connection with this case.
>
> And now the debtor is saying: Oh, no, I'm not eligible. I want out.
>
> And that's not okay. There is something called judicial estoppel, and there have been statements made under penalty of perjury and on the record. And I don't think it was even just that first hearing. I think we even had a second hearing where there certainly was an opportunity to change course at that point and say we were wrong and here's why.
>
> Didn't happen. Debtor doubled down: No, we absolutely are eligible.
>
> **So I've continued to rely from the get-go on that, and we've operated on that assumption.**

(Emphases added.)

Accordingly, the court accepted the Trust's representation that it was a business trust eligible for bankruptcy protection when the court converted the case rather than dismissing it.[3]

---

[3] At oral argument, the Trust said that it did not mislead the court (or the court should not have accepted its statements).
(continued...)

13

### 3.    Unfair advantage or unfair detriment

Third, the Trust both received an unfair advantage and caused its bankruptcy estate to suffer an unfair detriment.

The Trust admitted that it filed for bankruptcy for the sole purpose of halting the foreclosure and forfeiture proceedings. It made misrepresentations to the court and, as a result, gained approximately half a year of bankruptcy protection between the time of the bankruptcy filing and the denial of the Third Motion to Dismiss (and almost two years overall), during which time the Property was protected from foreclosure.[4]  It would be unfair to

---

[3](...continued)
Among other things, it took the position that the statements in Grover's declaration were not misstatements of material fact, but merely "opinions."  The judicial estoppel doctrine does not distinguish between assertions of fact and "opinions."  The Trust also argued that, even though it had represented to the court that a business tenant occupied the Property pursuant to a three-year lease, in actuality, the tenant did not pay any rent and there is no evidence of corporate use on the property to "establish materiality" of the statements.  In other words, the Trust contends that the court could not rely on its representations because they were false.  This argument refutes itself.

[4] At oral argument, the Trust argued that it did not gain any benefit regarding the forfeiture proceedings, since they had been terminated prior to the Trust's bankruptcy filing.  This argument is not supported by the record.  The Trust filed for bankruptcy on September 23, 2015, and the criminal court issued its order prohibiting the DOJ from seeking restitution from Colin on October 1.  Moreover, the Trust admitted in its first motion to dismiss, filed well after October 1, that the purpose of the bankruptcy filing was to avoid forfeiture of the Property: the "[p]rotection and 'the safe harbor' provided by the Bankruptcy Court is no longer required as the principle asset sought to be protected by the filing, the single family home of Colin Nix, is no longer a target of Department of Justice 'asset forfeiture program'."

14

allow the Trust to benefit from its underhanded conduct.

The Trust also caused a detriment to the estate. The Trustee expended estate assets and resources in administering the estate, and the Trust's interference undoubtedly made his task more difficult and expensive.[5] The court also confirmed at the hearing that the Trustee was continuing to administer the estate, including retaining a broker to inspect and market the Property. As such, the Trust caused unfair detriment to the estate.

Therefore, the court did not abuse its discretion in applying judicial estoppel to preclude the Trust from arguing that it is not a business trust.

## CONCLUSION

For the reasons set forth above, we AFFIRM.

---

[5] For example, the Trustee had to file an emergency motion for turnover, due to the Trust's alleged interference with his entry to the Property. The court granted the emergency motion in part and compelled the debtor to allow the Trustee to enter, inspect, and examine the Property.

15