In re Jennifer HO, Debtor.

Jennifer Ho, Appellant,

v.

Edwina Dowell, Chapter 13 Trustee, Dai Hwa Electronics, Appellee.

BAP No. CC–01–1345–PBK.

Bankruptcy No. LA 01–16532 ER.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 24, 2001.

Filed March 13, 2002.

David A. Tilem, Tilem & White LLP, Glendale, CA, for Jennifer Ho.

John W. Mills, III, Feder & Mills, Los Angeles, CA, for Dai Hwa Electronics.

Before PERRIS, BRANDT and KLEIN, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

The bankruptcy court determined that appellant Jennifer Ho ("Debtor") had

debts exceeding the limit for chapter 13 [1] eligibility set forth in § 109(e) and dismissed her case. In reaching that conclusion, the court counted a contract debt of a corporation in which Debtor was a minority shareholder. Debtor was neither a party to the contract nor a guarantor of the debt, but had listed the corporate creditor as a creditor holding an unliquidated, disputed, unsecured claim on her bankruptcy schedules, with the amount of the claim specified as "unknown." This case presents the question of whether a chapter 13 debtor's liability for a debt plays any role in determining whether the debt is unliquidated for purposes of determining eligibility to be a chapter 13 debtor under § 109(e). Because we conclude that it does, and because we conclude that under the facts and circumstances present in this case, the debt at issue is unliquidated, we REVERSE and REMAND.

## BACKGROUND

Appellee Dai Hwa Electronics ("DHE") objected to confirmation of the chapter 13 plan proposed by Debtor, and requested that her case be dismissed. DHE alleged that Debtor was ineligible to be a chapter 13 debtor because her unsecured debts exceeded the dollar limit applicable under § 109(e). DHE also asserted that Debtor filed her petition in bad faith. The bankruptcy court determined that Debtor's unsecured debts exceeded the statutory

limit and that she acted in bad faith by filing her petition shortly before a state court established a trial date in a case involving Debtor. The bankruptcy court entered an order dismissing Debtor's chapter 13 case "with a 180 day bar to refiling in any chapter." [2] Memorandum of Decision and Order Dismissing Chapter 13 Case, 8:19–20. Debtor timely appealed.

## ISSUES

1. Whether the bankruptcy court erred in concluding that Debtor's unsecured, liquidated debts included a breach of contract claim against a corporation in which Debtor is a shareholder when Debtor was not a party to or guarantor of the contract, but did schedule the corporate creditor as a creditor holding a noncontingent, disputed, unliquidated claim of an unknown amount.

2. Whether the court abused its discretion in dismissing Debtor's chapter 13 case for bad faith because she filed her petition shortly before the state court set a trial date.

## STANDARD OF REVIEW

 "Whether a debt is liquidated involves the interpretation of the Bankruptcy Code and is reviewed *de novo*." *In re Slack*, 187 F.3d 1070, 1073 (9th Cir.1999). We review a bankruptcy court's finding of bad faith for clear error. *In re Leavitt*, 171 F.3d 1219, 1222–23 (9th Cir.1999). Clear error exists when, after examining

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Rule 9021 requires that "[e]very judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document." In this case, the bankruptcy court included a discussion of its reasoning in the order on appeal. The "separate judgment" requirement may be considered waived

by the parties where the trial court clearly evidenced its intent that the order from which an appeal was taken would represent the final decision in the case, a judgment was recorded in the clerk's docket and the prevailing party does not object to the taking of the appeal in the absence of a separate judgment. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 387–388, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). These requirements are satisfied in this case and the "separate judgment" requirement is therefore considered waived.

the evidence, we are left with a definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). We review the decision to dismiss a case for bad faith for an abuse of discretion. *Leavitt*, 171 F.3d at 1223. A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact. *United States v. Sprague*, 135 F.3d 1301, 1304 (9th Cir. 1998).

## DISCUSSION

### 1. *Chapter 13 Debt Limitation*

■ As of the date Debtor filed her petition, § 109(e) provided, in relevant part, that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $269,250 . . . may be a debtor under chapter 13 of this title."[3] Only debt that is both noncontingent and liquidated on the date the petition is filed is counted toward the dollar limit set out in § 109(e).

■ Whether Debtor's unsecured debts are less than the § 109(e) limit turns on the evaluation of two claims that are the subject of two separate lawsuits. Debtor scheduled both as unliquidated, disputed, and "unknown" in amount. Debtor's other unsecured debts totaled $175,580.50, consisting of the $101,324.50 of unsecured debts on Debtor's Schedule F and a secured debt in the amount of $74,256 ($2,400,000 Taiwan dollars), which Debtor concedes is fully undersecured because it is secured by worthless stock. Because the unsecured portion of undersecured debt is counted as unsecured for § 109(e) eligibility purposes, *In re Scovis*, 249 F.3d 975, 983 (9th Cir.2001), the entire $74,256 counts in determining whether Debtor's unsecured obligations exceed the applicable limit. If the debts that are the subject of the two lawsuits exceed $93,669.50 and are liquidated,[4] Debtor is ineligible to be a chapter 13 debtor under § 109(e).

The lawsuits are *Dai Hwa Electronics (Malaysia) Sdn. Bhd. v. Daiho Electronic, Inc., Jennifer Ho aka Sheng Ho aka Sheng–Jen Ho, and Does 1—100*, Los Angeles County Super. Ct., Case No. KC–032523 (filed Feb. 15, 2000) ("*Dai Hwa v. Daiho*"), and *Great Tone Ltd. v. Daiho Electronic, Inc*, Los Angeles County Super. Ct., Case No. BC–200289 (filed Nov. 5, 1998) ("*Great Tone v. Daiho*").

Debtor is a party defendant in *Dai Hwa v. Daiho*, allegedly liable on counts of accounting, breach of fiduciary duty, and a shareholders' derivative action for damages. The demand for damages is "in excess of $50,000.00." The plaintiff in that case filed a proof of claim in bankruptcy court for $1,387,651.39,[5] most of which re-

---

**3.** The § 109(e) limits applicable in this case were $269,250 for unsecured debt and $807,750 for secured debt. For cases filed after March 31, 2001, the limits are $290,525 and $871,550, respectively. These amounts are subject to periodic adjustment in accordance with § 104.

**4.** Debtor did not designate any of her unsecured, nonpriority debts as contingent in her Schedule F and did not raise the issue of contingency before the bankruptcy court. To the extent that she attempts to raise the contingency issue in footnote 3 of her appellate brief, it is too late. We generally do not consider for the first time on appeal issues not raised before the bankruptcy court, *In re Ehrle*, 189 B.R. 771, 776 (9th Cir. BAP 1995), and decline to do so in this case.

**5.** DHE argues that Debtor is ineligible to be a chapter 13 debtor based on its claim alone, because it has filed a $1,387,651.39 proof of claim, Debtor has not objected to its claim and, under § 502(a), a claim is deemed allowed absent an objection. We reject DHE's argument for two reasons. First, the bankruptcy court did not rely in this theory when

flects Daiho's inventory ($626,578.92) and accounts receivable ($659,041.54) as of June 30, 1998.

The bankruptcy court fixed $50,000 as the liquidated debt in *Dai Hwa v. Daiho*. Assuming that any amount could have been "readily ascertained" as a liquidated debt with respect to this lawsuit, the fact that the amount fixed was less than $93,669.50, means that *Great Tone v. Daiho* also figures in the calculus.

The court evaluated *Great Tone v. Daiho* as reflecting a liquidated debt of $640,792.50, the amount of the open book account being sued upon. The bankruptcy court stated:

> Great Tone's claims for breach of contract and common counts for goods sold and delivered are self-evident as arising out of contract. Examination of Great Tone's state court complaint *against Debtor* confirms this determination. Specifically, Great Tone alleges that *Debtor* is liable for an open book account for goods and merchandise forwarded to Debtor. Consequently, such liability in the approximate amount of $640,792.50 can be readily ascertained and is liquidated for purposes of § 109(e).

Memorandum of Decision and Order Dismissing Chapter 13 Case, 6:12–19 (footnotes omitted; emphasis added).

This conclusion was erroneous because Debtor was not named as a defendant in the *Great Tone v. Daiho* complaint and the complaint contains no allegations against

her. In fact, the bankruptcy court acknowledged that Debtor was not a named defendant in the *Great Tone v. Daiho* action. The court stated as follows in footnote 2 of its memorandum decision:

> Debtor is not a named defendant in Great Tone's complaint. However, Debtor listed Great Tone's complaint against [Daiho] in her bankruptcy schedules. Moreover, in Debtor's supplemental papers, Debtor concedes she is a party to the pending [Great Tone action].

As this excerpt indicates, the court relied on the fact that Great Tone was listed as a creditor in Debtor's schedules and that Debtor filed a cross complaint on behalf of Daiho in the Great Tone action.[6] Neither of these reasons is a valid basis for concluding that Great Tone's breach of contract claim is a liquidated debt of Debtor.

■ The problem with counting the $640,792.50 *Great Tone v. Daiho* debt as a liquidated debt of Debtor's is that Debtor is not a party to the Great Tone lawsuit. Great Tone does not allege that Debtor, who was an officer, director, and minority shareholder of Daiho, is individually liable and nothing alleged in the complaint points in that direction.

Not only was Debtor not a party; the court refused to allow her to pursue a cross-complaint on behalf of Daiho. The state court dismissed the cross-complaint for lack of standing, ruling that, as a mi-

---

it concluded that DHE's claim was liquidated in the amount of $50,000. Second, the amount of a chapter 13 debtor's debt is determined as of the date of the filing of the petition. *In re Slack*, 187 F.3d 1070, 1073 (9th Cir.1999). A court cannot look to postpetition events to determine the amount of a debt. *Id.*

6. After the hearing before the bankruptcy court on DHE's request for dismissal, Debtor filed supplemental papers, which included the

complaint in *Great Tone v. Daiho* and the cross complaint she filed on behalf of Daiho. Debtor makes no express concession of liability in her supplemental papers. The bankruptcy court apparently concluded that Debtor's filing of the cross complaint on behalf of Daiho caused her to become personally liable for the breach of contract claim. For the reasons discussed below, we disagree with that conclusion.

nority shareholder, Debtor could not direct the litigation activities of Daiho and was limited to the sole remedy of a shareholder derivative suit.

Debtor says she scheduled Great Tone as a creditor because of her potential liability for a sanctions-type award for having intermeddled in the case. She did not suggest personal liability for the $640,792.50 open book account.

Thus, the prospects for individual liability on the open book account are far-fetched.

Because the court's allocation of liability on the open book account was the dispositive reason it concluded that Debtor was ineligible for chapter 13 relief, this appeal reduces itself to the question of whether the probability that a debtor will be held liable plays any role in determining whether the debt should count for purposes of calculating eligibility for chapter 13 relief under § 109(e), and whether it should matter how the debtor lists the debt on her initial schedules.

■ A debt is liquidated if the amount of the debt is readily determinable. *In re Slack,* 187 F.3d 1070, 1073 (9th Cir. 1999); *In re Nicholes,* 184 B.R. 82, 89 (9th Cir. BAP 1995). Whether a debt is subject to "ready determination" depends on whether the amount is easily calculable or whether an extensive hearing is needed to determine the amount of the debt. *Slack,* 187 F.3d at 1074. *See also Nicholes,* 184 B.R. at 89 ("The test for 'ready determination' is whether the amount due is fixed or certain or otherwise ascertainable by reference to an agreement or by a simple computation.").

■ The panel in *Slack* stated that it was holding that "a debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided." 187

F.3d at 1075. However, that holding must be tempered by prior Ninth Circuit precedent (which *Slack* did not overrule) and the facts of that case.

*Slack* was a motion to dismiss that was granted early in the case on the premise that noncontingent, liquidated, unsecured debt reflected in certain state court litigation by an insurance company suing to recover payments exceeded the then-applicable $250,000 limit. Two events had occurred before bankruptcy: the debtor had stipulated that plaintiff's actual damages were $255,954 and the state court had issued a tentative decision that the debtor was jointly and severally liable for $659,971. After the case was dismissed, but while the appeal was pending, the state court entered judgment against the debtor for $854,060 ($455,480 for the relevant plaintiff).

■ Stripped of its dicta, *Slack* stands for two straightforward propositions: first, postpetition events are irrelevant to whether a debt is liquidated on the date of filing bankruptcy, 187 F.3d at 1073; and second, a debtor's prebankruptcy stipulation in state court that a plaintiff suffered damages of $255,954, liquidated the debt for § 109(e) purposes, making it "readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided." *Id.* at 1075.

Unfortunately, those two straightforward propositions are clouded by the ambiguous discussion in *Slack* of the effect of disputes over liability. In some places *Slack* appears to reject any link between liquidation and liability: "Therefore, the concept of a liquidated debt relates to the amount of liability, not the existence of liability. Even if a debtor disputes the existence of liability, if the *amount* of the debt is calculable with certainty, then it is liquidated for the purposes of § 109(e)."

187 F.3d at 1074–75 (citation omitted) (internal quotations omitted). In other places, *Slack* suggests liability does matter: "Whether the debt is subject to 'ready determination' will depend on whether ... an extensive hearing will be needed to determine ... the liability of the debtor." *Id.* at 1074. Finally, the *Slack* panel noted that, in a previous decision that did not involve a liability dispute, it had "declined to resolve the question whether a dispute regarding liability can render a debt unliquidated," 187 F.3d at 1075, and then said:

We resolve that question today. We hold that a debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided.

*Id.*

In *Slack*, the debtor's liability had been all but decided by the prebankruptcy, tentative ruling in state court. Thus, the use of the phrase "finally decided" in referring to liability questions may tacitly recognize that liability was not seriously at issue in that case. The *Slack* holding, then, does not necessarily resolve the question whether some disputes about liability can render a claim unliquidated. Because the *Slack* panel was not presented with a situation involving a liability dispute that rendered a debt not capable of ready determination, its apparent broad holding should not be interpreted to sweep so far.

The holding in *Slack* must be read in conjunction with other aspects of the opinion. The court in *Slack* stated that:

[w]hether the debt is subject to 'ready determination' will depend on whether the amount is easily calculable or whether an extensive hearing will be needed to determine the amount of the debt, *or* the liability of the debtor.

187 F.3d at 1074 (emphasis added). This statement must be viewed as part of the holding, or the opinion is at odds with the

precedent on which it relies. The Ninth Circuit cited with approval *In re Nicholes*, 184 B.R. 82 (9th Cir. BAP 1995), which the panel said is "consistent with the law of this circuit." *Slack*, 187 F.3d at 1075. In *Nicholes*, we held:

Construing [*In re Sylvester*, 19 B.R. 671 (9th Cir. BAP 1982) ] with [*In re Wenberg*, 94 B.R. 631 (9th Cir. BAP 1988) ] and [*In re Loya*, 123 B.R. 338 (9th Cir. BAP 1991) ], we hold that the fact that a claim is disputed does not per se exclude the claim from the eligibility calculation under § 109(e), since a disputed claim is not necessarily unliquidated. So long as a debt is subject to ready determination and precision in computation of the amount due, then it is considered liquidated and included for eligibility purposes under § 109(e), regardless of any dispute. On the other hand, *if the dispute itself makes the claim difficult to ascertain or prevents the ready determination of the amount due, the debt is unliquidated* and excluded from the § 109(e) computation.

184 B.R. at 90–91 (emphasis added). When the *Slack* panel quoted from *Nicholes* in its opinion, however, it omitted the last sentence of our discussion, which made it clear that a dispute about liability could, under certain circumstances, affect whether a debt is liquidated.

The circuit's omission of that portion of our decision in *Nicholes*, along with its brief summary of its holding, which suggests that major liability issues are not relevant to the determination of whether a debt is liquidated, makes it unclear whether the circuit meant to remove any issues of liability from the determination of whether a debt is liquidated or unliquidated.

We conclude that *Slack* should not be read to remove that issue from the analy-

sis. The Ninth Circuit cited *Nicholes* with approval in its decision, and *Nicholes* is rooted in the Ninth Circuit precedent of *In re Wenberg,* 902 F.2d 768 (9th Cir.1990), where the circuit affirmed and adopted our opinion, which had said that "[t]he definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts *or liability.*" *In re Wenberg,* 94 B.R. 631, 634 (9th Cir. BAP 1988) (emphasis added). Nothing in *Slack* indicates an intent to retreat from *Wenberg.* Particularly in light of the fact that, in *Slack,* there was no real question of liability (only of whether the determination of liability was finalized in state court), the court's failure to quote the entire passage from *Nicholes* should not be interpreted to transmogrify *Nicholes* to mean that liability disputes *never* play a role in determining whether a debt is unliquidated or to overrule *Wenberg.*

Interpreting *Slack* as DHE would have us do would lead to gamesmanship and punishment of the diligent. Bankruptcy schedules are supposed to be over-inclusive. Every potential creditor should be listed in order to have notice of the bankruptcy and an opportunity to protect itself.

If listing a debt that is more theoretical than real would defeat chapter 13 eligibility, then we will have created a powerful disincentive to the accurate, complete and candid schedules that are vital to a bankruptcy system, which relies on self-reporting.

If *Slack* were interpreted to preclude consideration of the remoteness of liability, we would have created a dilemma that inevitably will lead to schedules that are shaded to omit debts at the margin of liability.

Obviously, in this case, there would need to be allegations of liability and an extensive hearing to determine Debtor's liability for the Great Tone contract debt. The amount of the open book account debt allegedly owed to Great Tone can be ascertained to the penny. But not even Great Tone contends that Debtor is personally liable.[7] Therein lies the rub. This is not a case where all that is lacking is a final determination as to the debtor's liability.[8] In addition, even if Debtor is liable, it is not self evident that she is liable for the entire amount of the debt. While a dispute as to liability will not "necessarily render a debt unliquidated," *Slack,* 187 F.3d at 1074, the nature of this dispute does.[9]

---

**7.** At oral argument, DHE relied on the declaration of Low Suan Fat to establish a basis for concluding that Great Tone's breach of contract claim is a debt of Debtor's. However, there is nothing in that declaration to support DHE's position. Indeed, the bankruptcy court discussed the declaration only in connection with its consideration of whether certain debts were contingent. It did not reference the declaration in the portion of its memorandum dealing with the question of liquidation.

Debtor complains that the bankruptcy court erred in considering the declaration of Low Suan Fat, because the declaration was not filed timely. We need not address this issue,

because it does not appear that the bankruptcy court relied on this declaration in determining that the Great Tone debt was liquidated. In any event, Debtor did not object to the declaration before the bankruptcy court and is precluded from doing so for the first time on appeal.

**8.** We acknowledge that there will be cases where a debtor's liability for a corporate debt will be liquidated. Our holding in this case should not be construed to foreclose that possibility in different factual circumstances.

**9.** The Ninth Circuit's recent decision in *In re Scovis,* 249 F.3d 975 (9th Cir.2001) dealt with a different question than we face today. *Sco-*

## 2. Bad Faith

 Section 1307(c) provides that a court may dismiss a chapter 13 case "for cause." The Ninth Circuit has concluded that a debtor's bad faith in filing a chapter 13 petition is cause for dismissal under § 1307(c). *See In re Eisen,* 14 F.3d 469 (9th Cir.1994). In determining whether a chapter 13 petition has been filed in bad faith, a bankruptcy court must review the "totality of the circumstances." *Eisen,* 14 F.3d at 470 (quoting *In re Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982)).[10] A bankruptcy court should consider the following factors:

(1) whether the debtor misrepresented facts in his or her petition or plan, unfairly manipulated the Bankruptcy Code or otherwise filed the Chapter 13 petition or plan in an inequitable manner;

(2) the debtor's history of filings and dismissals;

(3) whether the debtor's only purpose in filing for chapter 13 protection is to defeat state court litigation; and

(4) whether egregious behavior is present. *In re Leavitt,* 171 F.3d 1219, 1224 (9th Cir.1999).

 The bankruptcy court found that Debtor filed her petition in bad faith, stating as follows:

> *vis* tells us that, as to the factual question of the amount of a debt, generally the debtor's schedules will control. "[T]he bankruptcy court should normally look to the petition to determine *the amount of debt* owed, checking only to see that the schedules were made in good faith." 249 F.3d at 982 (emphasis added). *Slack,* and the predecessor Ninth Circuit cases on liquidation, tell us that whether a debt is liquidated is a legal question to be determined by the court.

10. *Goeb* involved a determination of good faith in the context of confirmation of a chapter 13 plan. "To determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan

Although the two lawsuits against Debtor commenced well before Debtor filed her bankruptcy petition, the court finds that the timing of Debtor's filing, just prior to the establishment of a trial date by the state court for the litigation with DHE, supports a finding of bad faith with respect to the filing of the present case. *See Eisen v. Curry (In re Eisen),* 14 F.3d 469, 470–71 (9th Cir.1994) (finding bad faith where the debtor timed the filing to frustrate a state court action with the automatic stay provisions of 11 U.S.C. § 362). Debtor's contention that her filing is attributable to lack of funding for the litigation is undermined by her purchase of the 50% interest of her sister's real property, secured by the Debtor's automobile, just prior to the petition date. These circumstances warrant dismissal of the case with prejudice

. . . .

Memorandum of Decision and Order Dismissing Chapter 13 Case, 7:18—8:3 (footnote omitted).

 We conclude that the bankruptcy court abused its discretion in dismissing Debtor's case, because it applied an incorrect standard when it determined that Debtor filed her petition in bad faith. Although the court tangentially mentioned the fourth factor,[11] it relied exclusively on

has been proposed in bad faith." *In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994).

11. Shortly before Debtor filed her petition, she signed a note for the purchase of a 50% interest in a piece of real property and secured that obligation with her equity in an automobile. Debtor listed her interest in the real property as exempt in her schedules. The bankruptcy court's comments indicate that it was troubled by Debtor's prepetition exemption planning, although it did not find that that activity was improper. In the Ninth Circuit, "a debtor may convert non-exempt property into exempt property even on the eve of bankruptcy. The Code presumes that creditors know the law and bear the risk that

the third factor and did not base its bad faith finding on the totality of the circumstances. A "court must make its good-faith determination in the light of *all* militating factors." *Goeb*, 675 F.2d at 1390. *See also In re Street*, 55 B.R. 763, 764 (9th Cir. BAP 1985)(in considering the question of good faith, a court must consider all the factors that relate to the equities in a particular case).

The bankruptcy court relied on *Eisen* in finding that Debtor filed her petition in bad faith. However, *Eisen* states that bad faith exists where the debtor's *only* purpose is to defeat state court litigation. 14 F.3d at 470. The bankruptcy court could not have concluded that Debtor's only purpose was to defeat state court litigation without considering all of the circumstances surrounding the filing of her chapter 13 petition. In addition, the facts of *Eisen* are far more egregious and clearly distinguishable from those of this case. The debtor in *Eisen* filed multiple petitions on the eve of trial and disclosed contradictory and misleading information. 14 F.3d at 471. There is no indication that Debtor is guilty of such conduct.

▮ In addition, a finding of bad faith does not mean that dismissal of the chapter 13 case is the appropriate result. A finding of "bad faith" is "cause" either to dismiss the case or to convert it. A court is obligated to choose between the two options based on the best interests of the creditors and the estate. § 1307(c); *Leavitt*, 171 F.3d at 1224.

On remand, if the court determines that Debtor has acted in bad faith, the court should consider whether dismissal would meet the "best interests of creditors and the estate" criterion of § 1307(c). The schedules indicate Debtor paid her sister $6,350 that might be an avoidable preference under 11 U.S.C. § 547 and transferred interests in her residence and Mercedes Benz that might be vulnerable to attack under 11 U.S.C. § 548(a)(1)(A). The estate and creditors might be better served by conversion to chapter 7, instead of dismissal.

## CONCLUSION

We REVERSE the court's determination that Debtor's unsecured liquidated debts exceed the limit of § 109(e) and REMAND to allow the bankruptcy court to determine whether Debtor's plan meets the applicable requirements and to consider the totality of the circumstances in deciding whether she filed her petition in bad faith.

KLEIN, Bankruptcy Judge, Concurring.

I join the majority opinion and write separately, first, to address another error—oft-repeated but evading review—in the dismissal order and, second, to emphasize that, if the Ninth Circuit meant everything it said in *Slack* and *Scovis*, then our decision regarding chapter 13 eligibility cannot stand, and we will be in a Wonder-

---

debtors will position their property to their best advantage." *In re Roosevelt*, 176 B.R. 200, 208 (9th Cir. BAP 1994) (citations omitted).

Because the bankruptcy court did not mention many of the facts discussed by the concurrence, such as possible administrative insolvency and possible lack of any payments to creditors, we do not discuss them. We agree with the concurrence that such facts may be relevant in the further proceedings in this case that will follow the remand.

Likewise, we do not discuss the bankruptcy court's dismissal with a 180 day bar to refiling, because Debtor argued that the court erred in dismissing the case at all, not that it erred in imposing the 180 day bar to refiling. In any event, the 180 day period has passed and any issue with regard to that aspect of the order is moot.

land of counterproductive pleading formalism: "sentence first—verdict afterwards."

## I

This appeal can be comprehended only if one recognizes that there are three separate facets to the order on appeal.

## A

First, as this was a plan confirmation that degenerated into dismissal, the order represents a refusal to confirm a chapter 13 plan under § 1325(a) because of ineligibility and lack of good faith. Our conclusion that the debtor was eligible under § 109(e) takes away ineligibility as a basis to refuse to confirm her plan. Although we do not rule on good faith under § 1325(a)(3), we remind the bankruptcy court that *Goeb's* "all militating factors" analysis sets the appropriate standard for determining whether to confirm the plan. *Goeb*, 675 F.2d at 1391.

### 1

Although we take no formal position on the outcome of the "all militating factors" analysis prescribed by *Goeb*, it is plain that some of the pertinent factors are adverse to confirmation.

It is significant that the chapter 13 case is probably administratively insolvent. The debtor's chapter 13 plan calls for her to make plan payments totaling $1,800.00 ($50.00/month × 36 months) that, net of estimated trustee fees, would provide only $1,602.00 to pay all other administrative expenses, with the residue, if any, to creditors. Since administrative expenses include fees for debtor's counsel, who bills $300.00 per hour and by now must have consumed his $2,500.00 retainer, the chance of any payment to creditors appears to be very low.

Indeed, the administrative insolvency may make the plan not confirmable as a matter of law due to the predictable insufficiency of funds to pay administrative expenses in full (unless debtor's counsel agrees to a different treatment). 11 U.S.C. §§ 507(a)(1), 1322(a)(2) & 1326(b)(1).

Next, the debtor engaged in bankruptcy planning that could be vulnerable to criticism. She executed a deed of trust (as co-debtor with her sister) dated nine days prebankruptcy and a "mortgage" to her sister dated ten days prebankruptcy on an $85,000 loan secured by her 50 percent interest in the residence and by her otherwise-unencumbered 1998 Mercedes Benz.

Moreover, the debtor's repayment of a $6,350 debt to her sister six months prebankruptcy that might be avoidable.

Nor is the plan providing nominal payment to creditors being justified on a theory of using chapter 13's muscle to cure a default by forcing a secured lender to accept payments over time or to hold an importuning priority creditor at bay. Here, no defaults are being cured and no secured or priority creditors are being otherwise dealt with under the plan.

### 2

It would be reasonable to infer, having eliminated the usual reasons for legitimate nominal payment plans, that this plan was designed to preempt litigation before entry of judgment that might make the debtor ineligible under § 109(e).

Any judgment in excess of $93,669.50 would push total unsecured debt over the $269,250 limit. In the action in which the debtor is a party, there is a demand of "in excess of $50,000.00," and a $1,387,651.39 proof of claim, with allegations that would make the debt nondischargeable in chapters 7 and 11.

Thus, the timing of the filing of this chapter 13 case looks like a simple race to the courthouse so as to collect a "super-

discharge" in order to discharge debts that might not be discharged in a chapter 7 case.

### 3

These aspects of *Goeb's* "all militating factors" analysis of "good faith" under § 1325(a)(3) do not bode well for plan confirmation. All funds to be paid under the plan would wind up going to the chapter 13 trustee and debtor's counsel. The main purpose for the nominal payment plan is to eliminate debt that cannot be discharged in chapters 7 or 11 and that, if liquidated, likely would make the debtor ineligible for chapter 13.

While these factors are not necessarily fatal, I doubt that the court would have confirmed the plan if it had performed the *Goeb* analysis. If plan confirmation had been the sole issue in this appeal, then I might be urging affirmance on the theory that the record supports the result despite the absence of findings.

### B

The second facet of the order represents a determination of "cause" under § 1307(c) premised on ineligibility and bad faith. The gravamen of our conclusion that the debtor is eligible for chapter 13 relief is that any finding of § 1307(c) "cause" would require a totality of the circumstances analysis followed by, if "cause" is found, consideration of whether conversion or dismissal is in the best interests of creditors and the estate.

While the circumstances are the same, the question of dismissal or conversion has more at stake than mere denial of plan confirmation. This extra dimension warrants careful analysis by the bankruptcy court.

### C

The third facet of the order declares the debtor ineligible to file another bankruptcy case for 180 days and does so in the form of an injunction. Here, our decision is silent. Unlike the majority I would decide its merits, as the court's "180–day bar to refiling in any chapter" is at odds with the Bankruptcy Code and usually evades review.

### 1

The bankruptcy judge reasoned that a mere finding of "bad faith" warranted application of § 109(g), which provides that a individual debtor is ineligible to be a debtor for 180 days after dismissal of a bankruptcy case:

> if (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362[.]

11 U.S.C. § 109(g).

Not only does § 109(g) say nothing about bad faith, the court should have made findings about willfulness of a violation of an order of the court or of a failure to appear before the court in proper prosecution of the case in order to justify invoking § 109(g). What those findings would be are not apparent as there is no obvious violation of § 109(g).

### 2

Although the court cited the Ninth Circuit's *Eisen* decision as authority to apply § 109(g) to a dismissal for "bad faith," the remark to that effect in *Eisen* is pure dictum.

The question of the debtor's eligibility to file bankruptcy was not an issue in *Eisen.* The 180–day bar had long since been mooted by the passage of time. The per curiam opinion does not discuss § 109(g)

and would, if it really was intended to be a holding, have explained how bad faith can be shoehorned into the language of § 109(g). Finally, the only thing in *Eisen* arguably probative of § 109(g) issues is a reference to the debtor's failure to disclose a prior bankruptcy and submission of "contradictory and misleading" descriptions of his interest in property, both of which could reasonably be viewed as willful violations of orders of the court. *Eisen*, 14 F.3d at 471.

I doubt that, if the *Eisen* panel had considered the issue, it would have said that a "bad faith" choice of chapter 13 in one case should slam the door to legitimate chapter 7 relief or preclude other creditors from filing an involuntary case, both of which are consequences of debtor ineligibility.

This appeal illustrates the problem. It cannot be said that the debtor had no legitimate bankruptcy purpose in filing her case. In addition to the debt that may be nondischargeable, she has $171,042.98 in unsecured debt that appears eligible for discharge in chapters 7 or 11. This was not a serial filing. At worst, her "bad faith" transgression was selecting the chapter 13 remedy over the chapter 7 remedy in circumstances in which she was either ineligible for chapter 13 or doomed to fail.

The debtor has the non-waivable right to convert a chapter 13 case to chapter 7 "at any time." 11 U.S.C. § 1307(a)("Any waiver of the right to convert under this subsection is unenforceable.").[12] Thus, the failure of a chapter 13 case, by way of unsuccessful plan confirmation or otherwise, ordinarily leaves the debtor with the option of converting to chapter 7, rather than being expelled from bankruptcy for 180 days.

### 3

Moreover, the bankruptcy court imposed its 180–day bar with what looks like an injunction. It is not settled that this is the correct manner of proceeding. If another case were to be filed within 180 days and assigned to another judge, the usual procedure is to move for dismissal in the later-filed case rather than to ask the earlier judge to enforce the injunction.

The better way to make the § 109(g) record in the first case is for the court, having made findings, formally to declare that the "debtor has willfully failed to abide by orders of the court" and/or "willfully failed to appear before the court in proper prosecution of the case" and then let nature take its course.

### II

If the Ninth Circuit really meant everything it said in *Slack* and *Scovis,* then our decision on chapter 13 eligibility cannot stand and counterproductive pleading formalism will reign.

### A

Read together, *Slack* and *Scovis* paint chapter 13 eligibility matters into a neat corner entirely in the debtor's control by virtue of a nearly immutable focus on the initial schedules.

On one hand, a debt is liquidated for purposes of § 109(e) if the amount is "readily ascertained," regardless of doubts about liability. On the other hand, § 109(e) eligibility is governed by the debtor's originally filed schedules, checking only to see if they were prepared in good faith.

---

**12.** Subsequent conversion from chapter 7 to chapter 11, requires the court's approval. 11 U.S.C. § 706(a)-(b).

*Slack* says, "[w]e hold that a debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided." *Slack,* 187 F.3d at 1075.

*Scovis* says, "[w]e now simply and explicitly state the rule for determining Chapter 13 eligibility under § 109(e) to be that eligibility should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith." *Scovis,* 249 F.3d at 982.

These two precedents, treacherously simple in their statement, mask complexity that invites abuse and confusion.

### B

I do not claim to have a comprehensive solution to this multi-dimensional puzzle and cannot pretend that our solution today is faithful to the letter of *Slack* and *Scovis.* We indulge in the liberty of construing the problematic portions of those decisions as dicta. The court of appeals may see it differently.

We should be striving toward a rule of chapter 13 eligibility analysis that is comprehensible by lawyers and judges, promotes full, candid, and complete disclosure in schedules, distinguishes between the objective and subjective dimensions of eligibility, settles the objective issues, and leaves to the bankruptcy judges the subjective issues so that we may fulfill the intent of Congress, as reflected in the fact that it prescribed specific debt limits in § 109(e).

Those who are entitled to the special protections of chapter 13 relief should have it, while the undeserving are excluded.

### 1

In a well-managed chapter 13 regime, one would expect that there would be two occasions for inquiring into whether the debtor had, on the date of filing, noncontingent, liquidated unsecured and secured debts within the § 109(e) limits, so as to be eligible for chapter 13 relief. One would also think that in the nitty-gritty daily judicial management of chapter 13 cases, the court would need some discretionary latitude in determining the pertinent amounts of debt.

First, early in the case the limits could be tested by way of a motion to dismiss or convert. The stakes of immediate importance to creditors early in the case are whether the debtor should be allowed to remain in control of property of the estate and whether the unique chapter 13 co-debtor stay should continue to apply. 11 U.S.C. §§ 1301 & 1306(b).

Second, at the time of confirmation, the debtor's § 109(e) eligibility for chapter 13 relief is logically subsumed within the essential elements for confirmation that the Bankruptcy Code be complied with and that the plan be proposed in good faith and not by any means forbidden by law. 11 U.S.C. §§ 1325(a)(1) & (a)(3). The important stakes to creditors at the time of confirmation are whether they will be held at bay for the life of the plan and then have otherwise nondischargeable debts discharged by way of the "superdischarge." 11 U.S.C. § 1328(a).

In this respect, it is worth remembering that chapter 13 is fundamentally in the nature of a remedy—a remedy more potent than other remedies in the Bankruptcy Code. Any individual can file a chapter 7 or 11 bankruptcy case, but only an individual whose debts are below the statutory limits can maintain a chapter 13 case in which more debts can be discharged, with creditors being held at bay by the automatic stay for the life of the plan. The trade-off for creditors is that the debtor must adhere to a regime of supervised payments that will pay creditors more than what they would receive under other Bankruptcy Code chapters.

## 2

While it is tempting to analogize § 109(e) to the $75,000 amount-in-controversy requirement for exercise of diversity jurisdiction, 28 U.S.C. § 1332, the analogy does not hold up because the § 109(e) determination has no impact on federal bankruptcy jurisdiction under 28 U.S.C. § 1334.

The amount-in-controversy requirement for diversity jurisdiction is part of the determination of the existence of the court's jurisdiction, which needs to be resolved early in a civil action. It would be dysfunctional judicial administration to permit the initial determination that there is jurisdiction to be routinely revisited and second-guessed later in the litigation.

In contrast, federal jurisdiction is not at stake in an eligibility determination under § 109(e). There is federal bankruptcy jurisdiction over an individual's bankruptcy case under § 1334, regardless of whether the individual's debt structure qualifies for chapter 13. If the debtor is not eligible under § 109(e) for the remedies of chapter 13, the debtor is nevertheless eligible under chapters 7 and 11 because all individuals are eligible for some form of bankruptcy relief. To that end, § 1307(a) gives the debtor a non-waivable right to convert to chapter 7 "at any time."

In short, while failure to have $75,000 in controversy precludes federal diversity jurisdiction, deviation from the debt limits of § 109(e) does not defeat federal jurisdiction under § 1334. Rather, exceeding the debt limit merely affects which chapters, and which remedies, are available to the debtor.

Thus, no dysfunction results from permitting § 109(e) eligibility to be thoroughly litigated at the time of plan confirmation. A bankruptcy court's denial of an early motion to dismiss for ineligibility is merely a determination that the court will

allow the debtor to propose and attempt to confirm a chapter 13 plan, at which time the debtor will be required to prove eligibility for the chapter 13 remedy.

## 3

Since a finding of § 109(e) eligibility amounts to a choice of a more potent remedy regarding property rights than other chapters of the Bankruptcy Code, there is more need to continue to police the boundary after an initial determination is made.

If it is determined later in the chapter 13 case that the debtor was ineligible for chapter 13 at the time of filing, then the case is easily converted to a chapter for which the debtor is eligible, without defeating federal jurisdiction. The debtor can convert as of right under § 1307(a) and can dismiss as of right under § 1307(b), unless the case was earlier converted to chapter 13. Otherwise, conversion or dismissal, whichever is in the best interests of creditors and the estate, requires "cause" under § 1307(c).

Just as the stakes differ at the two pertinent stages of § 109(e) analysis, the nature of the litigation and burdens of proof differ. A creditor's failure to persuade the court to grant a motion to dismiss for § 109(e) ineligibility ought not to be conclusive with respect to the debtor's burden to demonstrate § 109(e) eligibility for purposes of plan confirmation.

As motion practice early in the case, sound judicial management discourages diversionary sideshows. In the absence of an apparent risk of dissipation of property of the estate, little harm, relative to being in chapter 7, results from permitting the chapter 13 case to proceed toward plan confirmation.

Thus, there is considerable logic in deferring to a debtor's schedules in early motion proceedings designed to short-circuit the chapter 13 process and in placing the burden on a moving creditor to present

a persuasive case promptly to demonstrate that the debtor is so clearly ineligible per § 109(e) that there is no point in giving the debtor a chance to prove eligibility in connection with plan confirmation.

The equation shifts, however, at the plan confirmation stage. The debtor has the burden of proof on all essential elements for confirmation, including that "the plan complies with the provisions of this chapter [13] and with the other applicable provisions of this title [11]" and whether "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. §§ 1325(a)(1) & (a)(3).

In view of the fact that the negotiation dynamic of chapter 11 is not present in chapter 13 cases because creditors are not allowed to vote to accept or reject the plan, plan confirmation is the primary occasion for chapter 13 creditors to have their Due Process opportunity to contest the plan.

Thus, in principle, one would expect a plan confirmation hearing could include a more careful evidentiary inquiry into the "ready determinability" of the nature and amount of the putative liquidated debt as it appeared as of the date of the filing of the petition, which is then an issue at the heart of two essential elements of plan confirmation, and no longer a diversionary sideshow.

That balance between interests of debtor and creditor was at the foundation of our position in the *Nicholes* decision, which was an appeal from denial of chapter 13 plan confirmation:

It is important to emphasize today that the bottom line is that § 109(e) calculations depend on "ready determination," not upon the existence or absence of disputes. If a debt is not readily determinable, whether as a result of a *dispute* or otherwise, then the claim is unliquidated. This approach encourages administrative efficiency, recognizes that Congress deliberately limited the avail-

ability of Chapter 13, and helps prevent potential abuse of the "superdischarge" provisions of Chapter 13.

*Nicholes,* 184 B.R. at 91 (emphasis supplied).

After *Slack* and *Scovis,* I am no longer confident that the law of the circuit is consistent with this construct.

\* \* \* \* \* \*

In sum, the chapter 13 system in this circuit is in disequilibrium if our decision today is not correct.

If that turns out to be the case, then the problem will have to be sorted out in some other way. One, or a combination, of two things will happen. Either, the genius of counsel, which knows no bounds, will devise new theories—perhaps challenging chapter 13 schedules as not prepared in good faith—to resolve festering chapter 13 eligibility issues. Or, the court of appeals will more cogently restate the law of the circuit.