**In re Tich HUA, fdba DTD Precision Auto Repair, Debtor.**

**No. 06–03013–LT13.**

United States Bankruptcy Court, S.D. California.

Aug. 24, 2009.

Charles E. Fougeron, La Mesa, CA, for debtor.

Thomas H. Billingslea, San Diego, CA, Chapter 13 Trustee.

Tiffany L. Carroll, Acting United States Trustee, Office of the United States Trustee, Department of Justice, San Diego, CA, for U.S. Trustee.

**ORDER AFTER EVIDENTIARY HEARING ON UNITED STATES TRUSTEE'S OBJECTIONS TO CONFIRMATION OF CHAPTER 13 PLAN**

PETER W. BOWIE, Chief Judge.

This case has a lengthy history. It was originally filed as a Chapter 7 petition on

---

October 6, 2006. The real estate lender quickly filed a motion for relief from stay, which was not opposed, and relief was granted. Subsequently, the debtor stipulated to extending the time within which the United States Trustee could file a complaint objecting to discharge.

On April 12, 2007 the United States Trustee filed a complaint seeking denial of a discharge pursuant to 11 U.S.C. § 727(a)(3),(a)(4) and/or (a)(5). At the center of the complaint are the facts that debtor refinanced his real property in December, 2005 netting almost $67,000; and that debtor purchased fourteen or more items of jewelry at a cost of over $23,000 in the first four months of 2006, which he promptly resold. The United States Trustee's complaint alleges that debtor is unable to produce books and records to explain what happened to either the proceeds or the jewelry except for generally unsupported claims that the proceeds were dissipated through his and his wife's gambling. A collateral allegation was that debtor made a false oath when signing his Schedules because he omitted any mention of the purchase or sale of the jewelry. Although not tied to any of the § 727 causes of action, the United States Trustee also alleged that debtor provided false income information to credit card companies and to the real estate lender as part of the debtor's applications.

Debtor filed his answer to the complaint, and the case proceeded. Approximately six months after the complaint was filed, the debtor converted the Chapter 7 case to one under Chapter 13. Both the Chapter 13 Trustee and the United States Trustee objected to confirmation of the debtor's Chapter 13 plan The United States Trustee's objection recited:

> The Debtor converted this case to chapter 13 after the UST filed a complaint objecting to his discharge. The allegations in the complaint show evidence of the Debtor's bad faith in filing his bankruptcy case including, but not limited to, overstatements of income in credit applications, misstatements regarding the debtor's employment, the misuse of credit cards and the consultation of a bankruptcy attorney within six months of running up credit cards. Based on the Debtor's bad faith in filing the case, the plan should not be confirmed pursuant to 11 U.S.C. § 1325(a)(3) and (a)(7).

The United States Trustee also challenged the plan's feasibility.

The United States Trustee's objection to confirmation came on for evidentiary hearing and, after taking evidence, post-hearing briefs were submitted and the matter was thereafter taken under submission. The Court has subject matter jurisdiction over the proceeding pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

In support of her objection to confirmation the United States Trustee repeats the oft-quoted statement to the effect that: "the principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). *Marrama* goes further and says:

> An issue that has arisen with disturbing frequency is whether a debtor who acts in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulently concealing significant assets, thereby forfeits his right to obtain Chapter 13 relief.

*Id. Marrama* has to be understood in its factual context, which involved conceal-

ment of an asset in the pending Chapter 7 case. When the trustee discovered and pursued the asset, the debtor sought to convert the case to Chapter 13. So while the debtor's bad faith conduct was committed prior to conversion, it was committed in conjunction with the filing of his chapter 7 petition and thereafter.

The point is simply illustrated. If the Congress had intended to make debtors ineligible for any bankruptcy protection or relief if they committed wrongful conduct before filing any bankruptcy petition, they could easily have said so in 11 U.S.C. § 109. But Congress did not. To the contrary, Congress provided that debts that arose prepetition because of wrongful conduct might be individually nondischargeable pursuant to 11 U.S.C. § 523(a), but the facts involved in how those debts arose are relevant to their individual dischargeability, but not to a debtor's eligibility to be a debtor under Title 11 of the United States Code.

To accentuate the point, 11 U.S.C. § 523(a) provides in part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . .

If Congress intended to preclude from bankruptcy eligibility persons who committed dishonest acts such as embezzlement or larceny, as examples, they could have said so easily. Instead, they structured a system that provided for the non-dischargeability of those sorts of debts while discharging the rest. That enhanced the possibility that nondischargeable debts would receive some payment eventually because there were fewer debts competing for the debtor's post-discharge resources.

To turn the process around and judicially create an exception denying debtors access to bankruptcy protection generally for committing the sorts of dishonest acts Congress has provided for in §⋅523(a) as individual nondischargeable debts turns Congress' carefully structured design on its head.

To be sure, the phrase "honest but unfortunate debtor" has a long and ill-defined history. In *Williams v. United States Fidelity & Guaranty Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289, 59 L.Ed. 713 (1915), the Supreme Court wrote:

It is the purpose of the bankrupt act to convert the assets of the bankrupt into cash for distribution among creditors, and then to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.

In *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), the court repeated:

One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.'

The Court then added:

This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.

*Id.*

It is important to recognize that the shape, scope and objectives of America's

bankruptcy law have changed over the intervening years, as the Supreme Court recognized in *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). There, the court observed in addressing the burden of proof for nondischargeability proceedings:

> This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." [Citation omitted.] But in the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor." *Ibid.*
>
> The statutory provisions governing nondischargeability reflected a congressional decision to exclude from the general policy of discharge certain categories of debts-such as child support, alimony, and certain unpaid educational loans and taxes, as well as liabilities for fraud. Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start.

Exemplifying the point is the decision of the Third Circuit Court of Appeals in *In re Lilley*, 91 F.3d 491 (1996). There, the debtor had been convicted of willful failure to file federal tax returns, and had run up a large tax debt. He filed a Chapter 7 petition, during which the bankruptcy Court determined the tax debt was nondischargeable. Then Congress increased the debt ceiling for chapter 13 and debtor filed under that chapter. The IRS filed a motion to dismiss based on the debtor's prepetition conduct which, on appeal, the district court granted. The Third Circuit reversed, noting that while the debt was nondischargeable in Chapter 7, it was dischargeable in Chapter 13. The court concluded:

> It is therefore wholly implausible that Congress would hold that the type of conduct in which Mr. Lilley admittedly engaged is so egregious as to warrant dismissal of his petition, but benign enough that the debt incurred as a result of this conduct would be dischargeable if no effort to dismiss his petition were made.

91 F.3d at 496. The Third Circuit remanded for a good faith totality of the circumstances analysis.

The case of *Handeen v. Le Maire*, 898 F.2d 1346 (8th Cir.1990), although decided before *Lilley*, takes the analysis one step further. LeMaire was convicted of aggravated assault involving a shooting. A civil judgment followed, then the debtor filed under Chapter 13. The court rejected Handeen's argument that debtor's prepetition criminal conduct made the subsequent civil judgment nondischargeable in Chapter 13, just as it would be in Chapter 7. The court instead focused on the issue of debtor's good faith and set out a multifactor list of items which it had applied in earlier cases. The court recognized, however, that many of those factors had been subsumed in 11 U.S.C. § 1325(b), and said that what remained of the factors was:

> "[w]hether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code."

898 F.2d at 1349. The court continued:

> Thus, in considering whether LeMaire proposed his plan in good faith, factors

such as the type of debt sought to be discharged and whether the debt is nondischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking chapter 13 relief are particularly relevant.

*Id.* Interestingly, a majority of the appellate court judges was appalled at the thought that a debtor might discharge such a debt through Chapter 13, even though it recognized that Congress had provided what some call a "superdischarge" as added incentive to use Chapter 13 over Chapter 7.

The Fifth Circuit took a different view in *In re Chaffin,* 836 F.2d 215, 216 (1988). There, the court stated:

> We adhere to our holding that the fact that Chaffin is invoking chapter 13 to obtain discharge of a debt previously held nondischargeable in Chapter 7 because it was incurred through fraud cannot, as a matter of law, suffice to show bad faith.

To the extent courts were previously correct in concluding, as some did, that resort to Chapter 13 to discharge a debt that was or would be nondischargeable in Chapter 7 was somehow an unfair manipulation of the Bankruptcy Code, notwithstanding Congress' intent in designing the carrot of the super-discharge, Congress largely eliminated the super-discharge in 2005, revising 11 U.S.C. § 1328 to provide that any debt "of the kind specified ... in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)" would not be discharged in Chapter 13. Nor would a debt "(4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual."

■ To the extent the United States Trustee's objection to confirmation is predicated on this debtor's prepetition behavior that gave rise to the specific debts that he now seeks to address by way of his Chapter 13 plan, the Court finds and concludes that such an argument is not supportable, and is hereby rejected.

Moreover, the court notes in passing that although afforded a full window of opportunity while the case was pending in Chapter 7, no creditor filed an adversary claiming the debt owed to it was nondischargeable. The result is that the debts the United States Trustee asserts arose from debtor's prepetition conduct were all dischargeable in the Chapter 7 proceeding long before debtor's conversion of the case to Chapter 13. Indeed, in Chapter 13 debtor proposes to pay a dividend to creditors that would have received nothing in Chapter 7.

All of the foregoing said, it still remains for the Court to assess debtor's claims of good faith both in filing the present petition under Chapter 13, as required by 11 U.S.C. § 1325(a)(7), and in proposing his Chapter 13 plan, as required by 11 U.S.C. § 1325(a)(3). In the Objection to Confirmation filed by the United States Trustee, that office argued debtor's bad faith in terms of pre-BAPCPA Chapter 7 cases. However, the office provided no persuasive authority for the notion that § 1325(a)(7)'s good faith requirement should be measured by Chapter 7 analysis, much less that Congress intended such an approach. And even then, the conduct attributed to debtor as evidencing his bad faith was his conduct prior to filing his initial petition under Chapter 7. That is in distinct contrast with *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007), where the debtor's conduct was post-filing in concealing a significant asset and then trying to convert to Chapter 13 to keep the asset after the trustee started to pursue it for creditors.

In looking at good faith filing under § 1325(a)(7), *In re Hieter,* —— B.R. ——, 2009 WL 692301 (Bankr.D.Idaho 2009), is helpful. There, the court recognized:

Because BAPCPA effectively codified the good faith filing requirement previously employed in the case law, that case law is applicable to any analysis of § 1325(a)(7).

Subsection (a)(7) was added to § 1325 by BAPCPA in 2005. After reviewing prior authorities, the court advised:

In making a determination of good faith, this Court should consider:

1) whether the debtor has misrepresented facts in his or her petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed the Chapter 13 petition or plan in our inequitable manner.

2) the debtor's history of filings and dismissals;

3) whether the debtor's only purpose in filing for Chapter 13 protection is to defeat state court litigation; and

4) whether egregious behavior is present.

*Ho v. Dowell (In re Ho),* 274 B.R. 867, 876 (9th Cir. BAP 2002). The Ninth Circuit has stated that a good faith test "should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13." [Citations omitted.]

In this case, almost all the United States Trustee's objections concern debtor's conduct prior to filing the original Chapter 7 petition, and those objections have largely been addressed. Debtor is not attempting to avoid or defeat state court litigation, nor is he trying to evade nondischargeability litigation in the Chapter 7. Moreover, if allowed to proceed and ultimately receive a discharge, that discharge will not reach any wider than a discharge in Chapter 7 would have—there would be no super-discharge, and the debtor will have had to fully perform his proposed plan over five years to receive the discharge, paying monies he would not have had to pay in Chapter 7.

■ The United States Trustee argues that if allowed to proceed in Chapter 13 debtor will avoid the consequences of a possible adverse ruling in their objection to discharge adversary in the Chapter 7. And it is certainly possible that the United States Trustee might have prevailed in that proceeding had it gone forward. The issue thus boils down to whether seeking to avoid § 727 litigation by converting to Chapter 13 and proposing to pay all disposable income for five years—assuming that was debtor's intent—is somehow bad faith on debtor's part. Even when a debtor was seeking to discharge a debt previously held nondischargeable, courts have concluded that is not enough to definitively establish bad faith. *In re Chaffin,* 836 F.2d 215, 216 (5th Cir.1988). There, the court remanded and instructed the lower court to assess whether debtor had proposed to commit all projected disposable income for three years to funding the plan. In addition, the court noted that while the creditor had obtained the nondischargeability judgment in Chapter 7, the creditor had not objected to the Chapter 13 plan. The appellate court stated: "The liberal policy of Chapter 13, affording a clean start even to a debtor with a tainted past, likewise requires a clear justification for denying confirmation of a plan to which no creditor has objected." 836 F.2d at 216–17.

Based on all the circumstances of this case, the Court finds and concludes that debtor has carried his burden of establishing that his conversion from Chapter 7 to

Chapter 13 was made in good faith as required by 11 U.S.C. § 1325(a)(7).

As already noted, 11 U.S.C. § 1325(a)(3) requires that debtor's plan have been "proposed in good faith and not by any means forbidden by law." In earlier years, courts developed non-exhaustive lists of factors to be considered. See, e.g., *Handeen v. Le-Maire*, 898 F.2d 1346, 1349 (8th Cir.1990). As explained in that opinion, Congress amended § 1325 to add subpart(b), requiring a debtor to apply all projected disposable income for a period of three years. That incorporated many of the "ability to pay" factors in the earlier tests. 898 F.2d at 1349. Section 1325(b) was again amended as part of BAPCPA, and courts continue to wrestle with its interplay with § 1325(a)(3).

In *In re Stitt*, 403 B.R. 694 (Bankr.D.Idaho 2008), the court recognized the foregoing debate, and adopted what it called an "intermediate approach:"

> Under this approach, "the sufficiency of the assets devoted to the plan is not a basis for a finding of lack of good faith under § 1325(a)(3), unless there is a showing of some sort of manipulation, subterfuge or unfair exploitation of the Code by the debtor." [Citations omitted.]

403 B.R. at 703. The essence of those grounds for a finding of bad faith have already been discussed. The Court finds and concludes that the record in this case does not reveal any sort of manipulation, subterfuge, or unfair exploitation of the Code. Accordingly, the Court finds and concludes that debtor has met his burden of demonstrating that his plan has been proposed in good faith, as required by § 1325(a)(3).

The remaining objection of the United States Trustee is to the feasibility of debtor's plan. Shortly after converting to Chapter 13, on November 7, 2007 debtor filed his amended schedules, including Schedules I and J. Schedule I showed that debtor had been employed for one month at an auto repair shop, and his non-filing spouse had been employed as a manicurist for the preceding three months. Their joint net income, before expenses, was $3,220. The joint family expenses are listed on Schedule J as $2,970, leaving a net income after expenses of $250 per month for the family.

The United States Trustee acknowledged at the evidentiary hearing that the feasibility objection was secondary to the good faith arguments. However, it was pointed out that debtor's nonfiling spouse testified that she had monthly expenses for her separate credit cards which were not included on Schedule J. The net effect of that information is that the family net income would be reduced below the level necessary to make the monthly plan payments to the Chapter 13 trustee, and thus rendered the proposed plan infeasible.

Feasibility is a very real concern. Countering it to some degree is the United States Trustee's stipulation at the hearing that debtor was current on all payments to the Chapter 13 trustee over the preceding one year. The Court is also mindful that while debtor is only required to propose a 36 month plan, debtor has committed to making payments for 60 months. While the dividend to unsecured creditors is small as a percentage, that is caused in significant part by inclusion of a junior mortgage obligation that became unsecured when the property was foreclosed. Lastly, the Court recognizes that debtor can earn a discharge of any of his scheduled debts only if he fully performs his plan over 60 months. If he fails, he is back at the beginning. He has an incentive to succeed.

*Conclusion*

For all the foregoing reasons, the Court overrules the objections to confirmation filed by the United States Trustee. During the course of the proceedings, the Chapter 13 trustee joined in the objections of the United States Trustee, and asked to be excused from the evidentiary hearing. The Court's rulings as to the objections of the United States Trustee apply equally to the same objections of the Chapter 13 trustee.

IT IS SO ORDERED.